**MILLER BREWING COMPANY, Plaintiff-Appellant,**

v.

**FORT WORTH DISTRIBUTING CO., INC., Defendant-Appellee.**

No. 85–1156.

United States Court of Appeals, Fifth Circuit.

Jan. 30, 1986.

John T. Helm, Cecil W. Casterline, Mark M. Petzinger, Drew R. Heard, Dallas, Tex., for plaintiff-appellant.

Goins, Underkofler, Crawford, Durwood D. Crawford, Dallas, Tex., for defendant-appellee.

Before GOLDBERG, REAVLEY and GARWOOD, Circuit Judges.

GOLDBERG, Circuit Judge:

This case has been brewing far too long. Things came to a head when plaintiff-appel-lee Fort Worth Distributing Company went into state court in 1980 to prevent Miller Brewing Company from terminating a distributorship agreement between the two companies. After having its state court suit dismissed with prejudice for want of prosecution, however, Fort Worth Distributing now invokes an arbitration clause in order to pursue essentially the same claim. We find Fort Worth Distributing's case flat and stale at this juncture, and direct the district court to grant Miller Brewing's application for a stay of arbitration.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 28, 1978, Miller Brewing Company ("Miller") and Fort Worth Distributing Company, Inc. ("FWDC") entered into a Distributorship Agreement. 2 Record on Appeal ("Rec."), Exhibit A, at 10. This Agreement granted FWDC the right to distribute Miller beer products in Tarrant County, Texas, for five years, but provided that Miller could terminate the Agreement at any time on ten days' notice. *Id.* at 1–2. The Agreement further provided that, in the event of early termination, FWDC could demand that an arbitration panel be formed to hear "[a]ny claim by Distributor arising out of, relating to, or resulting from the termination of this Agreement by Miller...." *Id.* at 2, 9. If an arbitration panel found that Miller had terminated FWDC without "cause," as defined by an accompanying Addendum on Arbitration, the panel could order Miller to pay compensatory monetary damages to FWDC. *Id.* at 9–13.

On the same day that they signed the Distributorship Agreement Miller and FWDC also entered into a supplemental Memorandum Agreement. This Memorandum Agreement addressed certain events and activities that had taken place during the term of FWDC's previous Distributorship Agreement with Miller. Apparently, FWDC employees or officers had been making payments and giving gifts to Mil-

ler's regional managers.[1] The Memorandum Agreement provided that FWDC would furnish to Miller all evidence, documents, and records relating to payments made to Miller employees; in return, Miller agreed that "no information obtained pursuant to this Agreement will be used to terminate, cancel or refuse to renew the . . . Distributorship Agreement. . . ." Memorandum Agreement (2 Rec., Exhibit E) at 1.

In a letter dated April 7, 1980, however, Miller notified FWDC that the Distributorship Agreement was being terminated as of July 10, 1980. In response, FWDC brought a lawsuit in Texas state court on April 29, 1980, complaining that Miller's action would result in damages in excess of five million dollars; FWDC sought to enjoin Miller from terminating the Distributorship Agreement and also demanded attorney's fees and "such other and further relief to which it may show itself justly entitled." *Fort Worth Distributing Co., Inc. v. Miller Brewing Company, et al.*, No. 141–60627–80, Plaintiff's Original Petition (2 Rec., Exhibit E), at 10. Miller had the state court action removed to the United States District Court for the Northern District of Texas. The removal decision came before this court on appeal, and the case was remanded to the state district court. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir.1981) (companion case).

Meanwhile, FWDC had notified Miller in a letter of January 2, 1981, that it was demanding arbitration pursuant to the Distributorship Agreement and the supplemental Memorandum Agreement. As FWDC acknowledges in its brief, however, "Neither Miller nor FWDC took steps to cause the American Arbitration Association to schedule a hearing until FWDC did so on September 22, 1984." Appellee's Brief at 2. FWDC probably chose that occasion to set arbitration in motion because its state court suit had just been dismissed with prejudice for want of prosecution the day

before. Miller sought a stay of arbitration proceedings in the United States District Court, Fish, J., and now appeals the dismissal by that court of its application for injunctive relief.

## II.  STANDARD OF REVIEW

As it comes before this court, this case presents few, if any, important factual disputes. Jurisdiction is proper under 28 U.S.C. §§ 1332 (diversity of citizenship (Texas and Wisconsin)) and 1291 (final decisions). Both parties have stipulated to the essentials of the factual and procedural history outlined above. Stipulation and Agreement, 1 Rec., at 2. The only question before this court is whether the district court properly dismissed Miller's application for a stay of arbitration proceedings.

In ruling on Miller's application for injunctive relief the district court below saw no witnesses and heard no testimony. As contemplated by Fed.R.Civ.P. 43(e), the matter was determined on affidavits. Of course, the parties are in disagreement as to the legal implications that should be drawn from the facts. But in these circumstances an appellate tribunal has broad authority to substitute its own conclusions of law for those of the trial court. *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) (the clearly-erroneous standard "does not inhibit an appellate court's power to correct errors of law").

## III.  WAIVER OF ARBITRATION

◼ We first consider whether FWDC has waived its right to arbitration by invoking the judicial process and forcing Miller to expend substantial amounts of time and money defending itself in that forum. Waiver of arbitration is not a favored finding, and there is a presumption against it. As the Supreme Court stated in *Moses H. Cone Memorial Hospital v. Mercury Construction Company*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), "ques-

---

**1.** FWDC notes in its brief that the gifts, as befits Texas-style bribery, consisted of rifles, hats, and    boots. Appellee's Brief at 4.

tions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *See* 9 U.S.C. § 2. Nevertheless, under appropriate circumstances a waiver of arbitration may be found. Even in stressing the policy favoring arbitrability the *Moses Cone* Court noted that "Congress' clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." 460 U.S. at 22, 103 S.Ct. at 940.[2] Here, of course, FWDC's first step was to move the parties *into* court; its belated attempt to arbitrate 3½ years later, after losing in court, can hardly be seen as moving the parties into arbitration "as quickly and easily as possible."[3]

■ Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.[4] "The right to arbitration, like any other contract right, can be waived. A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right." *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513, 513 (D.C.Cir. 1966) (footnotes omitted); *accord Burton-Dixie Corp. v. Timothy McCarthy Const. Co.*, 436 F.2d 405, 407–08 (5th Cir.1971). As this court noted in *E.C. Ernst, Inc. v. Manhattan Const. Co.*, 559 F.2d 268, 269 (5th Cir.1977), "When one party reveals a disinclination to resort to arbitration on any phase of suit involving all parties, those parties are prejudiced by being forced to bear the expenses of a trial.... Substantially invoking the litigation machinery qualifies as the kind of prejudice ... that is the essence of waiver."[5]

■ FWDC has demonstrated a clear and unmistakable "disinclination" to arbitrate, and has done so to the substantial detriment and prejudice of Miller. FWDC's Original Petition in the Texas court suit against Miller did not rely on or even mention the arbitration clause. Only in January, 1981—nearly eight months after bringing its state court suit—did FWDC announce its intention to arbitrate. Thereafter, however, "Neither Miller nor FWDC took steps to cause the American Arbitration Association to schedule a hearing until FWDC did so on September 22, 1984." Appellee's Brief at 2.

While its demand for arbitration lay dormant for 3½ years, FWDC was busily pursuing its legal remedies. Lawsuits were filed, at one time or another, in state trial court, the state court of appeals, federal district court, and this court. Of course, Miller had to participate and defend its interests in all these actions. The record reveals that numerous depositions were taken, and that Miller paid over $85,000 in legal fees and expended more than 300 hours of its own employees' time defending

---

**2.** *Cf. Radiator Specialty Co. v. Cannon Mills,* 97 F.2d 318, 319 (4th Cir.1938) ("[I]t is clearly the intention of Congress to provide that the party seeking to enforce arbitration can do so only when not guilty of dilatoriness or delay."); *Prima Paint Corp. v. Flood & Conklin,* 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967) (honoring "clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts").

**3.** We are mindful of the admonitions of the Chief Justice and others that arbitration is ordinarily preferable to litigation, but to allow arbitration on top of the protracted litigation in this case would be to add insult to injury. The doctrine of res judicata, *see* section IV *infra,* and its cousin collateral estoppel have probably done more to prevent useless and wasteful litigation than arbitration ever could.

**4.** The issue of arbitrability under the United States Arbitration Act is a matter of federal substantive law. *Prima Paint,* 388 U.S. at 402–08, 87 S.Ct. at 1805–08; *In re Mercury Const. Corp.,* 656 F.2d 933, 938–41 (4th Cir.1981), *aff'd, Moses Cone,* 460 U.S. at 23–26, 103 S.Ct. at 941–42; *E.C. Ernst, Inc. v. Manhattan Const. Co. of Texas,* 551 F.2d 1026, 1040 (5th Cir.1977). We thus dismiss out of hand FWDC's citation of 60 Tex.Jur.2d 199 for the propositions that "waiver is a question of fact based largely on intent. It is defined as 'an intentional release, relinquishment, or surrender of a right that is at the time known to the party making it.'"

**5.** *See also Midwest Window Systems v. Amcor Industries,* 630 F.2d 535 (7th Cir.1980) (right to arbitration waived even where issue submitted to court was non-arbitrable).

the FWDC claims. Affidavit of Warren H. Dunn, 3 Rec., Exhibit G; Affidavit of John T. Helm, 1 Rec. at 39. *Cf. Brown-McKee, Inc. v. Fiatallis,* 587 F.Supp. 38, 40 (N.D. Tex.1984) (finding waiver of arbitration where defendant in earlier suit expended 100 man-hours and $1,400 in attorney's fees).

Even more significant, perhaps, is the prejudice to Miller's legal position that resulted from FWDC's actions. A party to arbitration does not have a right to the pre-trial discovery procedures that are used in a case at law. A party "may not invoke arbitration and yet seek pre-trial discovery going to the merits.... [A]ny attempt to go to the merits and to retain still the right to arbitration is clearly impermissible." *Graig Shipping Co. v. Midland Overseas Shipping Corp.,* 259 F.Supp. 929, 931 (S.D. N.Y.1966).[6] There is every indication that Miller's position would be prejudiced and compromised in arbitration by FWDC's use of pre-trial discovery going to the merits. In its Brief in Support of Remand filed in Federal District Court, for example, FWDC notes that

> In the four depositions already taken by Plaintiff of Hall, White, Andrews, and Warren Dunn, General Counsel of Miller Brewing Company, several important and undisputed facts have emerged, already proving many of the elements of the alleged conspiracy.

Brief in Support of Plaintiff's Motion for Remand (3 Rec., Exhibit I), at 4. Later in the same brief FWDC concludes as follows:

> Plaintiff expects to prove considerably more through its own witnesses at time of trial, but it believes and alleges that

the above undisputed facts taken from the testimony or documentary evidence produced by Defendants themselves already establish the major elements of a case against Defendants White, Andrews and Hall, and establish their complicity in the scheme for Miller Brewing Company to terminate Fort Worth Distributing Company in violation of agreements.

*Id.* at 6. Clearly, the discovery taken by FWDC in its legal proceedings goes to the merits of the claim it now seeks to arbitrate, namely the issue of wrongful termination. We have no difficulty concluding from these facts alone that FWDC thus waived its right to arbitration.

## IV. RES JUDICATA

■ Even if the waiver considerations outlined above did not apply, we would still have good grounds for enjoining arbitration proceedings in this case. The doctrine of res judicata, as developed by Texas courts, ensures that when a court of competent jurisdiction has entered a final judgment on the merits of a case, the parties are bound as to all claims that were raised or that *could* have been raised.[7] The Texas Supreme Court has declared that

> the rule of res judicata in Texas bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in a former action as well as those which were actually tried.... Stated differently, a party cannot relitigate matters which he might have interposed, but failed to do so, in an action between the same parties or their privies in reference to the same subject matter.

---

6. *Cf. Penn Tanker Co. of Delaware v. C.H.Z. Rolimpex, Warszawa,* 199 F.Supp. 716, 718 (S.D. N.Y.1961); *Commercial Solvents Corp. v. Louisiana Fertilizer Co., Inc.,* 20 F.R.D. 359, 361 (S.D. N.Y.1957) ("By voluntarily becoming a party to a contract in which arbitration was the agreed mode for settling disputes thereunder respondent chose to avail itself of procedures peculiar to the arbitral process rather than those used in judicial determinations."); Note, *Developments in the Law—Discovery,* 74 Harv.L.Rev. 940, 943 (1961) (expense of discovery as inconsistent with desire to arbitrate).

7. In applying the doctrine of res judicata we look to the effect that a Texas state court would give to a prior Texas state court judgment. *Flores v. Edinburg School District,* 741 F.2d 773 (5th Cir.1984); *Southern Jam, Inc. v. Robinson,* 675 F.2d 94, 97–98 (5th Cir.1982); *Allen v. McCurry,* 449 U.S. 90, 95–96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) (interpreting 28 U.S.C. § 1738); Restatement (Second) of Judgments § 134 (Tent. Draft No. 7, 1980).

*Abbott Laboratories v. Gravis,* 470 S.W.2d 639, 642 (Tex.1971); *see also Segrest v. Segrest,* 649 S.W.2d 610, 612 (Tex.1983); *State v. Sunray DX Oil Co.,* 503 S.W.2d 822, 827–28 (Tex.Civ.App.—Corpus Christi 1973). The Arbitration Act contemplates that awards made pursuant to arbitration will be confirmed in the federal courts. 9 U.S.C. § 9. Since an arbitration award involves the entry of judgment by a court, parties should be barred from seeking relief from arbitration panels when, under the doctrine of res judicata, they would be barred from seeking relief in the courts. *See Ank Shipping Co. v. Seychelles National Commodity Co.,* 596 F.Supp. 1455, 1458–59 (S.D.N.Y.1984); *N.Y.S. Association for Retarded Children v. Carey,* 456 F.Supp. 85, 96 (E.D.N.Y.1978).

Counsel for appellee and the district court below emphasized repeatedly that FWDC's state court suit involved non-arbitrable matters. This claim is true but irrelevant. As Miller correctly and succinctly notes in its brief,

> It is irrelevant that FWDC did not have a right to arbitrate its claim for injunctive relief. FWDC had the right to seek damages for wrongful termination in the court action against Miller in addition to its seeking injunctive relief. Simply put, when FWDC elected to file its lawsuit, it elected its forum for relief and was required to raise all issues and theories of recovery in that proceeding.

Appellant's Brief at 11. Once FWDC elected state court as its forum for relief, the relevant question is whether the damages provided for in the arbitration clause could have been sought in court, not whether the injunctive relief sought in court could have been granted in arbitration. FWDC's claim is logically of the same form as the claim: "Not all mammals are rabbits." This claim is doubtless true, but who (other than a lawyer) would bother to assert it? The relevant claim would be: "Not all rabbits are mammals." In other words, FWDC should argue that the more inclusive category of claims that can be adjudicated in state court (the "mammals") does not include all its arbitrable claims (the "rab-

bits"). This claim, if true, would explain and justify FWDC's attempt to "reserve" its arbitrable claims for later and separate determination, after its lawsuit had been concluded. But FWDC does not, and by all indications cannot, make this claim; instead, it appears that FWDC could have amended its state court pleadings at virtually any point in this protracted litigation to include a claim for the damages (for wrongful breach of the Distributorship Agreement) it now seeks to arbitrate. *See* Texas Rules of Civil Procedure 63 (Amendments), 66 (Trial Amendment), 67 (Amendments to Conform to Issues Tried Without Objection).

Thus, even if we assume that FWDC's state court suit did not include a claim for damages of the sort covered by the arbitration clause, FWDC is nonetheless barred from arbitrating that claim now because such a claim *could* have been included in the state court suit. On closer examination, moreover, it appears that FWDC *did* implicitly make the same claim for damages in state court that it now seeks to arbitrate.

We turn first to FWDC's state court pleadings. Essentially, they allege causes of action for breach of contract, tortious interference with existing and prospective contractual relations, and conspiracy; they estimate that FWDC's damages are in excess of five million dollars and demand injunctive relief, attorney's fees, and "such other and further relief to which [FWDC] may show itself justly entitled." FWDC maintains that these pleadings *"never sought to recover against Miller because of Miller's termination without cause, i.e., for breach of the Distributorship Agreement,"* and characterized the Memorandum and Distributorship Agreements as "totally separate" contracts giving rise to completely different causes of action. Appellee's Brief at 18, 4. To hear FWDC tell it, the state court suit was simply an action for injunctive relief, based solely on the Memorandum Agreement, while the arbitration would be for damages under the Distributorship Agreement.

We cannot help but note, however, that the one-page Memorandum Agreement refers by its terms to the Distributorship Agreement no less than four times and concludes as follows: "Miller agrees that no information obtained pursuant to this [Memorandum] Agreement will be used to terminate, cancel or refuse to renew the above described Distributorship Agreements...." As for the pleadings, in paragraph I FWDC cites the Distributorship Agreement and compliance therewith as the basis for its claims, making no mention of the Memorandum Agreement. Plaintiff's Original Petition (3 Rec., Exhibit E), at 1. In paragraph V FWDC alleges that Miller's planned cancellation of the "Distributorship Agreement ... is in violation and breach of the Memorandum Agreement...." *Id.* at 3. Paragraph VII alleges a "conspiracy ... to intentionally cause great and irreparable damage to Fort Worth Distributing by preventing the renewal of the Distributorship Agreement and thus preventing compliance by Miller with the Memorandum Agreement," and paragraph VIII restates this as a "conspiracy to violate the Memorandum Agreement and to cancel Fort Worth Distributing's Distributorship Agreement." *Id.* at 4. In light of these pleadings, we are unable to view FWDC's state court action as simply an application for injunctive relief premised solely on the Memorandum Agreement. The two agreements are inextricably intertwined, and the Distributorship Agreement is the *sine qua non* of FWDC's state court action.

Further clarification of FWDC's state court claims is provided by other briefs and papers filed in court. In its Brief in Support of Plaintiff's Motion for Leave to File First Amended Complaint, filed in Federal District Court on June 11, 1980, FWDC stated that "There has been no change to the substance of the liability theory or *damages* theories asserted by Plaintiff." 1

Rec. at 66 (emphasis added). In its letter of January 2, 1981, putting Miller on notice that it was demanding arbitration, FWDC asserted:

This demand for arbitration is made without waiving our claim for *damages* arising out of the matters alleged in Civil Action No. CA 4–80–138–E in the United States District Court for the Northern District of Texas Fort Worth Division, styled *Fort Worth Distributing Company, Inc. v. Miller Brewing Company, et al,* and we continue to insist upon our right to recover in that suit *full damages* ....

*Id.* at 65 (emphasis added). We take FWDC literally at its own word, then in determining that its state court suit could have included, and in fact did include, a claim for damages.

In arguing that its state court suit and its demand for arbitration are based on different causes of action, and that the latter is thus not barred by the doctrine of res judicata, FWDC faces a difficult hurdle. As this court observed recently in *Flores v. Edinburg Consolidated Independent School District,* 741 F.2d 773, 779 (5th Cir.1984), under Texas law "A different cause of action is not merely a different theory of recovery; it should differ in 'the theories of recovery, *the operative facts,* and the measure of recovery,' *Dobbs v. Navarro,* 506 S.W.2d 671, 673 (Tex.Civ. App.1974) (emphasis added)." As detailed above, the "operative fact" underlying both FWDC's state court suit and its demand for arbitration is the early termination of its Distributorship Agreement with Miller. Without that bedrock fact, neither claim would have any basis.[8] Moreover, it is not altogether clear that the two actions even differ in their theories of recovery or their measures of recovery. As noted amply above, FWDC managed to assess its monetary damages in its Original Petition filed

---

**8.** *See Flores,* 741 F.2d at 777 (" '[A] different cause of action' is one that proceeds not only on a sufficiently different legal theory but also on a different factual footing as not to require the trial of facts material to the former suit; that is,

an action that can be maintained even if all the disputed factual issues raised in the plaintiff's original complaint are conceded in the defendant's favor.")

in state court, and in briefs and other official documents it consistently styled its state court suit an action for damages. We thus conclude that FWDC is barred under the doctrine of res judicata from pursuing essentially the same claim now in arbitration.

## V. CONCLUSION

This case has consumed more than its share of judicial resources. We acknowledge that the doctrines of waiver and res judicata are stern ones, and that with more foresight or prescience FWDC might have avoided their harsh consequences. As this case comes before us, however, the equities weigh so strongly in Miller's favor that even a draught from the fabled Pierian Springs would probably not lend FWDC sufficient inspiration to prevail.

We conclude that FWDC has waived its right to arbitration by substantially invoking the judicial process to the considerable inconvenience, detriment, and prejudice of Miller. We conclude further that, even if waiver considerations did not apply, FWDC is barred from arbitration under the doctrine of res judicata because it could have included, and implicitly did include, in its state court proceedings a claim for the damages it now seeks to arbitrate.

Accordingly, we REVERSE and direct the district court to grant Miller Brewing Company's application for a stay of arbitration.

REVERSED.