# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01375-SCT

*UNIVERSITY NURSING ASSOCIATES, PLLC*
*AND THE UNIVERSITY OF*
*MISSISSIPPI MEDICAL CENTER*

*v.*

*BILLIE PHILLIPS*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/2/2001 |
| TRIAL JUDGE: | HON. PAT WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JERRALD L. SHIVERS |
| | M. CURTISS McKEE |
| ATTORNEYS FOR APPELLEE: | SHARON MARIE GARNER |
| | MARY MARVEL FYKE |
| NATURE OF THE CASE: | CIVIL - ARBITRATION |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART; AND REMANDED - 02/13/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1.     This matter involves an appeal from a chancellor's order denying a motion to compel arbitration and granting an accounting.  Finding that the plaintiff has a right to an accounting and that the defendants did not waive their right to arbitrate, we affirm in part; reverse and render in part; and remand for further proceedings.

# FACTS AND PROCEDURAL HISTORY[1]

¶2.     Billie Phillips joined the faculty of the University of Mississippi School of Nursing in November, 1995, and signed an "Employment Contract" with the School of Nursing.  In 1998, Anne G. Peirce, the new Dean of the School of Nursing, instituted a policy whereby all employees were required to participate in a faculty practice plan for earning outside income.  Phillips was required to sign a separate "Employment Agreement" ("PLLC Employment Agreement") with University Nursing Associates, PLLC ("the Nursing PLLC"), which addressed the conduct of her duties with the Nursing PLLC.[2]  The PLLC Employment Agreement contained an arbitration clause as follows:

> 16.     **Arbitration of Disputes:** Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association.  Judgment upon the award rendered by the arbitrator may be entered in any court of competent jurisdiction. . . .

---

[1]The facts were gleaned from the pleadings and exhibits.  Relief was granted to Phillips without a hearing, apparently on the chancellor's own motion.

[2]Services under paragraph 2 of the PLLC Employment Agreement were defined as follows:

> "Covered Services" shall mean the providing of nursing, health care, educational and consultation services at the University of Mississippi Medical Center (and its affiliates or approved practice sites and the Veteran's Administration Medical Center) including services for the production of honoraria, book and copyright royalties, legal fees and non-patient care consultation fees.

The PLLC Employment Agreement is a contract which is separate from her employment contract with the University.

¶3.    Phillips participated in the Nursing PLLC plan for approximately two years.  After her returns from the practice plan were very disproportionate to the amounts she had contributed, she sought an explanation and an accounting from the Dean.  The Dean refused to provide an accounting but allowed Phillips an extension of time to renew her PLLC Employment Agreement.  Because of her unhappiness with the Nursing PLLC plan, Phillips balked at signing an annual renewal of the PLLC Employment Agreement.  She wrote a letter to the Dean of the School of Nursing stating that if she did not receive an accounting she "intend[ed] to proceed to file an action requesting an accounting in Chancery Court." Thereafter, the School of Nursing immediately relieved Phillips of all of her duties, did not offer to renew her contract, and requested Phillips to vacate her office by September 5, 2000.

¶4.    The University informed Phillips that she had a right to file a grievance concerning its decision.  She filed a request to invoke the grievance procedure with the University. According to Phillips, the grievance committee responded that grievances concerning the PLLC Employment Agreement did not fall under the University grievance procedures.  The University admitted to informing Phillips that she could file a grievance but denied that it had informed her that the PLLC Employment Agreement did not fall under the University grievance procedures.

¶5.    On September 15, 2000, Phillips filed a petition for an accounting in the Chancery Court for the First Judicial District of Hinds County, Mississippi.  The named respondents

3

were the Nursing PLLC, the University of Mississippi Medical Center and Unacare Health Center.[3] Phillips' only request for relief was for the respondents "to provide a full and complete accounting of all funds taken in, expended by or otherwise disbursed by the University Nursing Associates, PLLC, or Unacare, relating to wages paid any [University] employees who perform services at the clinic pursuant to a practice plan agreement." Phillips requested all gross nursing practice receipts, nursing practice business expense deductions and all other related documents such as invoices, receipts, purchase orders, payroll stubs, etc., used in calculating the net earnings of University Nursing Associates, PLLC."

¶6.    The University and the Nursing PLLC filed an answer and affirmative defenses on November 9, 2000.  In their first affirmative defense, the University and the Nursing PLLC set out that any disputes concerning the agreement were to be settled by arbitration:

> 1.    In paragraph 16 of her employment agreement University Nursing Associates, PLLC, (Exhibit C to the petition), the petition agreed to settle all controversies or claims arising out or relating to the agreement by arbitration.

Phillips filed various discovery requests seeking information consistent with the petition for accounting.  The University and the Nursing PLLC filed a response to Phillips' requests for

---

[3]No separate response was filed by Unacare.  Unacare was alleged to be a "division" of the Nursing PLLC.  In its answer, the University and the Nursing PLLC admitted that the Nursing PLLC operated Unacare Health Center, but denied that Unacare was a separate entity.

discovery on December 15, 2000, objecting on the "grounds of relevance and the plaintiff's lack of legal standing to obtain this proprietary information."[4]

¶7.    Phillips filed a motion to compel and noticed it for hearing on March 2, 2001.  After the chancellor was informed of the arbitration clause, she directed the parties to submit briefs, and after consideration thereof, the chancellor held that the University and the Nursing PLLC did not waive enforcement of the arbitration clause by filing their answer and asserting the arbitration clause as an affirmative defense, but that waiver occurred as a result of the failure of the University and the Nursing PLLC to request arbitration in a timely manner.  The petition for accounting was granted.  The University and the Nursing PLLC appeal from this order.

## DISCUSSION

### I.    WHETHER PHILLIPS IS ENTITLED TO AN ACCOUNTING.

¶8.    We have previously defined an accounting as a written financial statement containing all receipts and disbursements:

> An accounting is by definition a detailed statement of the debits and credits between parties arising out of a contract or a fiduciary relation.  It is a statement in writing of debts and credits or of receipts and payments.  Thus an accounting is an act or a system of making up or settling accounts, consisting of a statement of the account with debits and credits arising from the relationship of the parties.

---

[4]The record does not contain a copy of the actual responses to Phillips' requests for discovery.  The responses of the University and the Nursing PLLC were, however, set out in Phillips' motion to compel discovery.

5

*State ex rel. King v. Harvey*, 214 So. 2d 817, 819 (Miss. 1968) (citing *Black's Law Dictionary* 34-36 (4th ed. 1957)). Also, an accounting implies that one is responsible to another for moneys or other things, either on the score of contract or of some fiduciary relation, of a public or private nature, created by law, or otherwise. 214 So. 2d at 819-20; *Miller v. Henry*, 139 Miss. 651, 103 So. 203 (1925) (quoting *Whitwell v. Willard*, 42 Mass. (1 Met.) 216).

¶9.     Although every contractual agreement does not give rise to a fiduciary relationship, in Mississippi, such a relationship may exist under the following circumstances: (1) the activities of the parties go beyond their operating on their own behalf, and the activities for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where one party has dominion or control over the other. *Hopewell Enters., Inc. v. Trustmark Nat'l Bank*, 680 So. 2d 812, 816 (Miss. 1996) (quoting *Carter Equip. Co. v. John Deere Ind. & Equip. Co.*, 681 F.2d 386 (5th Cir. 1982)).

¶10.    We find that a fiduciary relationship existed between Phillips, the University and the Nursing PLLC. The uncontroverted facts from the face of the pleadings show that Phillips was *required* by her employment contract to work at a University-operated clinic. According to the employment contract, if Phillips in her capacity as a nurse received earnings from any source other than her salary, she was allowed to keep the first $10,000, and was then *required* to contribute to the Plan fifty percent of any earnings in excess of $10,000. However, in practice, Phillips was *required* to contribute *all* of her nurse-related

6

earnings[5] in excess of $10,000. At the end of the year, she then was given "a return." In the

fiscal year 1998-99, Phillips paid approximately $6,000 to the Plan, meaning that she earned

$6,000 from sources other than her regular salary, but only received $767.00, far less than

fifty percent, back, without any explanation for the reduction.

¶11.    This scenario squarely meets the conditions needed for the creation of a fiduciary

relationship.  (1) The activities of the parties go beyond their operating on their own behalf,

and the activities for the benefit of both; and (2) Where the parties have a common interest

and profit from the activities of the other.  The activities that Phillips was required to

perform  were to her benefit and that of the University and the Nursing PLLC.  She was

allowed to keep some of her earnings and was given a return on her contributions.  The

University and the Nursing PLLC benefitted because she was working at a University-

sponsored clinic and because Phillips was required to make contributions to the Plan.  (3)

Where the parties repose trust in one another.  The University and the Nursing PLLC did not

have to *trust* Phillips because she was *required* to perform the activities given her and to

---

[5]The employment contract provides as follows:

> Net earnings from nursing practice are defined as gross nursing
> practice receipts less nursing practice business expense
> deductions allowable under the federal tax code (Schedule C).
> Such earnings shall include all patient care related income at
> University of Mississippi Medical Center, affiliated or approved
> practice sites, and Veterans Affairs Medical Center.  Also
> included is professionally derived income not associated with
> patient care which includes honoraria, book and copyright
> royalties, legal fees, and non patient care consultation fees.
> (Publications written prior to employment date are exempt from
> practice plan.)

contribute her earnings to the Nursing PLLC for its management of her funds. (4) Where one party has dominion or control over the other. The University and the Nursing PLLC definitely exercised dominion and control over Phillips. In fact, when she refused to submit to the Plan's terms, she was fired.

¶12. We have refused to recognize the existence of a fiduciary relationship in cases where the relationship between the two parties was no more than "an arms-length business transaction involving a normal debtor-creditor relationship." *Merchants & Farmers Bank of Raymond v. Williamson*, 691 So. 2d 398, 404 (Miss. 1997). The relationship between Phillips, the University and the Nursing PLLC was definitely *not* an arms-length business transaction. The terms of the contract were non-negotiable. Either Phillips could sign it or leave her employment with the University and the Nursing PLLC.

¶13. One of the key elements of a fiduciary relationship is "the fiduciary's control of the supervised party's property," and that "things of value such as land, monies, a business, or other things of value must be possessed or managed by the dominant party." *Arnold v. Erkmann*, 934 S.W.2d 621, 629 (Mo. Ct. App. 1996). The University and the Nursing PLLC possessed and managed Phillips' earnings, and she had no say-so in how her earnings were used.

¶14. Mississippi chancery courts hold the authority to hear a case for an accounting. *Crowe v. Smith*, 603 So. 2d 301, 307 (Miss. 1992); *Evans v. Hoye*, 101 Miss. 244, 253, 57 So. 805, 806 (1911); *see also* Miss. Const. art. 6, § 159; Miss. Code Ann. § 9-5-81 (2002). However, the jurisdiction of a court of equity over matters of account rests upon "three

grounds, to wit, the need of a discovery, the complicated character of the accounts, and the existence of a fiduciary or trust relation." *Henry v. Donovan*, 148 Miss. 278, 114 So. 482, 484 (1927). Therefore, because a fiduciary relationship existed between Phillips, the University, and the Nursing PLLC, and the University and the Nursing PLLC had possession and dominion over Phillips' earnings and has refused to give Phillips any information about the management of her earnings, the chancellor did not err in concluding that Phillips is entitled to an accounting. *See Miller v. Henry*, 139 Miss. 651, 103 So. 203 (1925).

## II. WHETHER THE UNIVERSITY AND THE NURSING PLLC WAIVED THEIR RIGHT TO ARBITRATION.

¶15. The University and the Nursing PLLC contend that accountings are subject to arbitration clauses. The chancellor did not reach this issue because she ruled that the University and the Nursing PLLC (1) *did not* waive their right to arbitration because of participating in litigation, but, (2) *did* waive their right to arbitration because of their delay in seeking arbitration. We will now address these rulings.

¶16. The grant or denial of a motion to compel arbitration is reviewed de novo. *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002). *See also Webb v. Investacorp, Inc.*, 89 F.3d 252, 256 (5th Cir. 1996).

A.    WHETHER THE UNIVERSITY AND THE
NURSING PLLC ACTIVELY PARTICIPATED
IN THE LITIGATION.

¶17.    A party seeking to invoke arbitration may waive that right if it actively participates

in litigation. *Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 619 So. 2d 908, 914 (Miss.

1993) (citing the Federal Arbitration Act which applies to claims arising from interstate

commerce);[6] *see also Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1158-59 (5th

Cir. 1986); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir.

1986). Waiver of arbitration is not a favored finding, and there is a presumption against it;

this is particularly true when the party seeking arbitration has included a demand for

arbitration in its answer, and the burden of proof then falls even more heavily on the party

seeking to prove waiver. *Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai*, 141

F.3d 234, 238 (5th Cir. 1998); *Miller Brewing*, 781 F.2d at 496. We have expressed our

intention to uphold arbitration agreements if at all possible under the circumstances. *See IP*

*Timberlands Operating Co. v. Denmiss Corp.*, 726 So. 2d 96, 104 (Miss. 1998) ("Articles

of agreement to arbitrate . . . are to be liberally construed so as to encourage the settlement

of disputes and the prevention of litigation, and every reasonable presumption will be

indulged in favor of the validity of arbitration agreements.").

---

[6]Even though the Federal Arbitration Act may not apply to this case (because interstate commerce is not involved), we will follow the case law which interprets the Act because the case law is based on sound principles which are easily transferable to non-interstate commerce litigation. *But see Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121-22, 122 S. Ct. 1302, 149 L. Ed. 2d 234 (2001) (The FAA has been held applicable to employment contracts even where interstate commerce is not obviously implicated.).

¶18.   One encyclopedia has opined that serving an answer and filing a motion to dismiss does not constitute a waiver of arbitration by participation in litigation:

> Whether participation in an action is a waiver of the right to arbitration depends on whether the participation bespeaks an intention to abandon the right. . . .  It has been held that the service of an answer in an action on the contract does not constitute waiver of the right to arbitration, even though the answer does not set up the arbitration clauses as a defense. . . . The mere serving of an answer and the making of a motion to dismiss a complaint does not constitute a waiver.

6 C.J.S. *Arbitration* § 37 (1975).

¶19.   The Fifth Circuit has held that where the party seeking arbitration has made a timely demand for arbitration at or before the commencement of judicial proceedings in the trial court, the burden of proving waiver falls even more heavily on the shoulders of the party seeking to prove waiver.  ***Tenneco Resins, Inc. v. Davy Int'l, AG***, 770 F.2d 416, 420 (5th Cir. 1985) (quoting ***Southwest Indus. Imp. & Exp., Inc. v. Wilmod Co.,*** 524 F.2d 468, 470 (5th Cir. 1975)); *see also* ***General Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.***, 427 F.2d 924, 929 n.5 (5th Cir. 1970) ("Once the defendant, by answer, has given notice of insisting on arbitration the burden is heavy on the party seeking to prove waiver.").

¶20.   In a case involving interstate commerce and therefore the Federal Arbitration Act, we have held that a right to arbitrate was waived when the party requesting arbitration had "participated in almost every aspect of litigation" and made "extensive use of various modes of pre-trial litigation."  ***Cox***, 619 So. 2d at 913 (citing ***Price v. Drexel Burnham Lambert, Inc.***, 791 F.2d 1156 (5th Cir. 1986) (Right to arbitrate waived by party who had initiated discovery and dispositive motions before demanding arbitration)).  In ***Cox***, the party

11

demanding arbitration filed an answer and counterclaim, a motion for summary judgment, argued the motion for summary judgment, requested two continuances, filed an interlocutory appeal, and requested various types of discovery. *Cox*, 619 So. 2d at 914. *But see Tenneco Resins*, 770 F.2d at 420 (A defendant did not waive arbitration, prior to moving for a stay, by filing an answer, interrogatories and a request for production of documents, moving for a protective order, and agreeing to a joint motion for continuance requesting an extension of the discovery period).

¶21.   Phillips argues that the University and the Nursing PLLC waived their right to arbitrate because they filed a response to her petition for an accounting and objections to her discovery requests and attended a hearing on her motion to compel.  In response, the University and the Nursing PLLC contend that they asserted their right to arbitration in their answer and at the hearing on the motion to compel, and that they therefore did not waive their right to arbitrate.

¶22.   The chancellor found that the participation by the University and the Nursing PLLC in this litigation did not constitute a waiver of its right to arbitrate.  We agree that, under the above-cited precedent, the minimal pretrial activities of the University and the Nursing PLLC did not constitute a waiver of arbitration.  The University and the Nursing PLLC did not propound any discovery requests to Phillips.  They objected to Phillips' discovery requests, raised arbitration in their answer, and asserted the right to arbitration at a subsequent hearing on a motion to compel.

¶23. As a practice note, parties desiring to seek arbitration should promptly file and present to the trial court a motion to stay proceedings and a motion to compel arbitration.

B. WHETHER THE ALLEGED DELAY IN DEMANDING ARBITRATION OF THE UNIVERSITY AND THE NURSING PLLC CONSTITUTED A WAIVER OF THEIR RIGHT TO ARBITRATE.

¶24. "Congress' clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." ***Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.***, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983) (quoted with favor in ***Miller Brewing***, 781 F.2d at 496). In ***Miller Brewing***, Fort Worth Distributing Company first sued Miller Brewing, and then, three and a half years later, after losing in court, sought arbitration. The Fifth Circuit held Miller Brewing could "hardly be seen as moving the parties into arbitration 'as quickly and easily as possible.'" ***Id***. at 497.

¶25. Phillips argues that University and the Nursing PLLC waived their right to arbitrate by their delay in asserting their right to arbitration. She contends that the dispute originated in June of 2000 and that the University and the Nursing PLLC "chose to dispute this matter with Phillips outside the arbitration process" by resorting to an internal grievance process. The University and the Nursing PLLC argue that they did not waive arbitration but, rather, timely made their demand.

¶26. Phillips initially brought up her dissatisfaction with the University and the Nursing PLLC and her request for an accounting in a letter to the Dean of Nursing on August 11,

2000. Phillips was terminated by letter dated August 31, 2000. On September 15, 2000, Phillips filed the petition for accounting. On November 9, 2000, the University and the Nursing PLLC asserted arbitration as an affirmative defense in their answer, but the issue was not brought before the chancellor until the hearing on the motion to compel in March of 2001. The chancellor found that Phillips was prejudiced as this matter was not expeditiously referred to arbitration.

¶27. We disagree with the chancellor's finding that University and the Nursing PLLC did not "expeditiously" refer the matter to arbitration. The Fifth Circuit has held that a delay of 13 months did not constitute a waiver, **Walker v. J.C. Bradford & Co.**, 938 F.2d 575 (5th Cir. 1991), but that a delay of 17 months did constitute a waiver. **Price**, 791 F.2d at 1160-62. There was no undue delay by the University or the Nursing PLLC in asserting arbitration before the chancellor. We therefore reverse the chancellor's finding that the delay of the University and the Nursing PLLC in raising arbitration constitutes a waiver of the right to arbitrate.

C. WHETHER THE ACTIONS OF THE UNIVERSITY AND THE NURSING PLLC PREJUDICED PHILLIPS.

¶28. "Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." **Subway Equip. Leasing Corp. v. Forte**, 169 F.3d 324, 326 (5th Cir. 1999); **Miller Brewing**, 781 F.2d at 497.

¶29. The chancellor found that Phillips had been prejudiced by the actions of the University and the Nursing PLLC:

14

> [Phillips] has been relieved from her current position as faculty on the nursing staff, incurred expense in seeking resolution of this matter and much time has past since her original request for information. . . Thus, had this matter been expeditiously referred to arbitration the need for terminating Phillips' contract may have been avoided.

¶30. However, according to the Fifth Circuit, "[P]rejudice . . . refers to the inherent unfairness – in terms of delay, expense, or damage to a party's legal position – that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Subway Equip.*, 169 F.3d at 327 (citing *Doctor's Associates v. Distajo*, 107 F.3d 126, 134 (2d Cir.), *cert. denied*, 522 U.S. 948, 118 S. Ct. 365, 139 L. Ed. 2d 284 (1997)). Phillips made no showing of prejudice due to delay, expense, or damage to her legal position. Furthermore, neither the University nor the Nursing PLLC invoked the judicial proceedings – Phillips did. Finally, because we find that the University and the Nursing PLLC did not substantially participate in litigation and did not cause an undue delay, their actions could not have caused any prejudice to Phillips.

### III. WHETHER THE CHANCELLOR ERRED BY NOT HOLDING A HEARING ON THE ISSUE OF PHILLIPS' RIGHT TO AN ACCOUNTING.

¶31. The University and the Nursing PLLC contend that the chancellor erred by summarily ordering an accounting without notice and hearing. We find that the fact that the chancellor did not hold a hearing prior to finding that Phillips was entitled to an accounting does not violate the University or the Nursing PLLC's right to due process, which provides that a person is entitled to notice and hearing before being deprived of his rights. *Cherry v. Bivens*, 185 Miss. 329, 187 So. 525, 527 (1939). As the Court has stated:

15

> Under the Constitution of Mississippi, section 24, every person for an injury done him in his lands, goods, person or reputation is entitled to remedy in due course, and by the Mississippi Constitution, as well as the Fourteenth Amendment to the Federal Constitution, . . . no person can be deprived of life, liberty or property, except by due process of law.

*Id.*, 187 So. at 527-28. A court must have a hearing if it would be "fundamentally unjust" to take away a citizen's "valuable rights" without an opportunity to be heard. *Id.* at 528.

¶32. We cannot say that it would be "fundamentally unjust" to require the University and the Nursing PLLC to provide an accounting, or that the University or the Nursing PLLC has been deprived of any of its "valuable rights." The "valuable right" involved in this matter is Phillips' earnings, not the process of an accounting.

¶33. Nevertheless, a hearing on a petition for an accounting is not necessary under certain circumstances:

> This was an action for an accounting. Midwest alleged that Goma refused to account for the monthly rentals received from the government agencies and refused to account for additional rent Goma received because of excess milage on the automobiles. Without this information, Midwest could not prove how much money it was owed. Only defendants had this information. Their refusal to provide it totally frustrated Midwest's attempts to show the amount of money it was owed.
>
> * * *
>
> The requirements of due process were met "by the presumption that the refusal to produce evidence material to the administration of due process was an admission of want of merit in the asserted defense" that no money was owing to Midwest.

*Midwest Developers v. Goma Corp.*, 360 N.W.2d 554, 561 (Wis. Ct. App. 1984) (quoting

*Hauer v. Christon*, 43 Wis. 2d 147, 152, 168 N.W.2d 81, 84 (1969)).

¶34. Here, Phillips' repeated attempts to receive an accounting were met with nothing but adamant refusals even to *consider* her request. Because her petition for an accounting is meritorious, because the University and the Nursing PLLC have continued to aver that she is not entitled to an accounting, or, worse yet, she does not have *standing* to request an accounting and that the information she requested was *proprietary*,[7] and because Phillips cannot acquire the information from any other source, and these things are shown on the face of the pleadings, no hearing was needed to adjudicate that Phillips was entitled to an accounting.

## IV. WHETHER AN ACCOUNTING IS SUBJECT TO ARBITRATION.

¶35. We find that the performance of an accounting is not subject to arbitration. An accounting does not involve any dispute except for whether the person seeking an accounting is entitled to one. Here, that dispute has been resolved in favor of Phillips. Now, the University and the Nursing PLLC must produce all information regarding Phillips' contributions to the plan. This information should, inter alia, include the amounts and dates of Phillips' contributions, the amounts and dates of reimbursements to Phillips, and the amounts of, dates made, recipients of, and uses of all funds not reimbursed to Phillips. To subject this accounting to arbitration is nonsensical. The University and the Nursing PLLC will have to produce the same information regardless of the forum in which the accounting

---

[7]We are astounded at the University's arrogance in stating that Phillips has no right or standing to know what was done with her earnings, and that this information is proprietary.

is made. If a dispute arises during the accounting, however, the chancellor must decide whether that dispute is arbitrable.

## CONCLUSION

¶36. We affirm the chancellor's ruling that Phillips is entitled to an accounting. We also affirm the chancellor's ruling that neither the University nor the Nursing PLLC waived their right to compel arbitration by actively participating in litigation. However, we reverse and render the chancellor's ruling that the University and the Nursing PLLC waived their right to compel arbitration by waiting to demand arbitration and that Phillips was prejudiced as a result thereof. We remand for an accounting and any further proceedings consistent with this opinion.

¶37. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART; AND REMANDED.**

**PITTMAN, C.J., SMITH, P.J., COBB AND CARLSON, JJ., CONCUR. McRAE, P.J., AND DIAZ, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION. EASLEY AND GRAVES, JJ., CONCUR IN PART AND DISSENT IN PART WITHOUT SEPARATE WRITTEN OPINION.**