970 So.2d 737 (2007)
Sandra K. DOMINQUEZ and Thomas Garner, Appellants
v.
Jeff PALMER, Individually, Mortgage Equity Lending, Inc., Wes Brewer d/b/a Wes Brewer Cattle Company and Wes Brewer, Individually, Appellees.
No. 2006-CA-01752-COA.
Court of Appeals of Mississippi.
November 27, 2007.
*738 Orvis A. Shiyou, Hattiesburg, attorney for appellants.
Michael Adelman, Hattiesburg, attorney for appellees.
Before KING, C.J., CHANDLER and CARLTON, JJ.
CHANDLER, J., for the Court.
¶ 1. On September 15, 2006, the Circuit Court of Forrest County granted a summary judgment in favor of the appellees, Jeff Palmer, individually, Mortgage Equity Lending, Inc., Wes Brewer d/b/a Wes Brewer Cattle Co., and Wes Brewer, individually. Aggrieved, the appellants, Sandra Dominquez and Thomas Garner, appeal. They assert that summary judgment was improper because they presented evidence on the following issues:
I. The standard of review is de novo, and the motion for summary judgment was not supported by affidavits.
II. There existed between the parties an implied oral brokerage contract with certain and definite terms.
III. The appellees failed to use reasonable care in seeking a loan on their behalf, and there was no evidence that the appellees used their best efforts.
IV. The appellees committed a breach of fiduciary duty, fraud, and a violation of the Mississippi Consumer Loan Broker Act.
V. The appellees waived the right to enforce statutorily mandated arbitration.
VI. The appellees should reimburse them for insufficient funds checks.
VII. They suffered emotional distress because of the actions of the appellees, and there was evidence to support negligent supervision and piercing the corporate veil.
¶ 2. Finding no error, we affirm.

*739 FACTS
¶ 3. Sometime in the fall of 2001, Sandra Dominquez and her husband, Thomas Garner, contacted Mortgage Equity Lending, Inc. about obtaining an equity loan against their home. They claim to have initially met with Mortgage Equity's agent, Wes Brewer, who remained their contact with the company throughout the following events. At this first meeting, they allege that they completed a loan application and discussed the financing terms.
¶ 4. At the next meeting with Brewer, Dominquez claims that he promised that she and her husband would be able to close on a loan by Thanksgiving of that year. When this date passed, Dominquez said that Brewer assured her that it would close soon. After this, she claims he continued to inform her of more closing dates only to change them as they arrived.
¶ 5. The record reflects that Brewer could not secure a loan for the couple, and it also shows that he did attempt to get them a loan. As pointed out by testimony, and as found by the judge, Dominquez's low credit score was the reason that she could not get a loan from either Mortgage Equity or from another lender, Southeastern Financing Co. Prior to requesting the services of Mortgage Equity, Dominquez and Garner had sought the services of Southeastern Financing, which was also unable to obtain financing for them. When Brewer later applied for a loan solely in Garner's name, however, he was able to secure $80,000 worth of financing.
¶ 6. Garner then used the $80,000 loan to buy his wife's house for $127,000. In purchasing the house, however, it was questionable why the warranty deed represented Garner and Dominquez as single and listed the home as rental property, when they were actually married and the house was their residence.
¶ 7. Dominquez and Garner testified that they were always free to seek financing from another lender. They alleged that they did not go elsewhere because they relied on Brewer's assurances that a loan would be forthcoming. It was because of those continued promises, they claimed, that their already bad financial condition worsened.
¶ 8. While these events were ongoing, Dominquez and Garner received checks from Wes Brewer and Wes Brewer Cattle Co. that they claim were intended to allow them to pay their living expenses during the ongoing loan process. Nevertheless, they admitted that some of the checks were actually payment to Garner for services that he performed for Brewer. They could not specify the specific purpose for each check nor which checks remained outstanding.
¶ 9. On April 9, 2003, Dominquez and Garner filed suit. On May 19, 2004, Palmer and the other appellees filed a motion for summary judgment. The judge entered an order on September 15, 2006, granting summary judgment against Dominquez and Garner and dismissing their complaint with prejudice.

ISSUES AND ANALYSIS
I. Standard of review for summary judgment
¶ 10. We review the trial court's grant of a motion for summary judgment under a de novo standard. Pride Oil Co. v. Tommy Brooks Oil Co., 761 So.2d 187, 190(¶ 9) (Miss.2000). Furthermore, this Court must review all the evidentiary material before it in a light most favorable to the party against whom the motion was granted. Id.
¶ 11. Rule 56(b) of the Mississippi Rules of Evidence provides that, "A party against whom a claim . . . is asserted . . . *740 may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof." "As to issues on which the nonmovant bears the burden of proof at trial, the movant needs only to demonstrate an absence of evidence in the record to support an essential element of the movant's claim." Pride Oil, 761 So.2d at 191(¶ 10).
¶ 12. Mere allegations are insufficient to defeat a motion for summary judgment. Richardson v. Norfolk S. Ry., 923 So.2d 1002, 1008(¶ 8) (Miss.2006). The party opposing the motion must set forth specific facts that show that a genuine issue of fact exists. Id. To survive summary judgment, a claim must be based on more than a scintilla of evidence. Wilbourn v. Stennett, Wilkinson & Ward, 687 So.2d 1205, 1214 (Miss.1996). "It must be evidence upon which a fair-minded jury could return a favorable verdict." Id. Unsubstantiated assertions are insufficient. Cong Vo Van v. Grand Casinos of Miss., Inc., 767 So.2d 1014, 1024(¶ 27) (Miss.2000).
¶ 13. In this case, Palmer's motion for summary judgment sufficiently alleged that Dominquez had not presented any genuine issues of material fact. The burden then fell on Dominquez to present affirmative evidence to show that there were such genuine issues of material fact. Pride Oil, 761 So.2d at 191(¶ 10). Accordingly, the claim that summary judgment was improper because Palmer failed to support his motion with an affidavit is without merit.
II. Oral contract
¶ 14. Dominquez next argues that the trial court's finding, that no contract existed because she could not identify any terms "sufficiently definite to be enforceable," was in error. She claims that she presented evidence of an implied oral brokerage contract with certain and definite terms.
¶ 15. The only authority cited by Dominquez to support her position is the case of Carmichael v. Agur Realty Co., 574 So.2d 603, 606-07 (Miss.1990). In Carmichael, the supreme court affirmed the finding of an implied brokerage contract when a purchaser refused to pay the real estate broker who assisted him in the purchase of a hotel. Id. at 610.
¶ 16. Carmichael is easily distinguishable from the case at hand in that it involved a real estate broker's suit to recover fees for services that he actually provided. In Carmichael, the parties signed a commission agreement as some evidence of an agreement. The issue in that case was a lack of a formal brokerage contract. This case differs from Carmichael in that Dominquez was not seeking restitution for services that were performed. Here, Dominquez claims there was an oral contract that required Palmer to obtain a mortgage loan for her within thirty days. However, there was no formal writing, and none of the parties can point to specific terms of the alleged contract to which they were to be held.
¶ 17. "A contract that arises from the conduct of the parties, also known as a contract implied in fact, has the same legal effect as an express contract. It carries as much weight as, and is as binding as an express contract." Franklin v. Franklin, 858 So.2d 110, 120(¶ 34) (Miss.2003) (citing Magnolia Fed. Sav. & Loan Ass'n v. Randal Craft Realty Co., 342 So.2d 1308, 1312 (Miss.1977)). The supreme court has previously held that "any conduct of one party from which the other party may draw the inference of a promise is effective as such and the conduct of the parties is viewed as a reasonable man would to determine the existence or not of the contract implied in *741 fact." Id. at 121(¶ 35) (citing Cooke v. Adams, 183 So.2d 925, 927 (Miss.1966)).
¶ 18. The testimony from Dominquez and Garner revealed that they dealt with Brewer who allegedly promised that, through Mortgage Equity, he would obtain a loan for them. They claim that, sometime in the fall of 2001, Brewer promised he could get a loan at a promised rate within thirty days. Under the alleged oral contract, Brewer promised to use his best efforts to get a loan for Dominquez within the thirty days in exchange for a brokerage fee. Brewer nor any of the appellees, however, received any benefit from the alleged contract. Furthermore, Dominquez was not bound to the services of Brewer. It was undisputed that she was free to seek out the services of another mortgage broker at any time.
¶ 19. Dominquez ignores the fact that Brewer did attempt to get a loan and, ultimately, he was successful in obtaining some financing in Garner's name. Instead she complains that he promised to have the loan within the thirty days and that he never even tried to find a loan until after that period had expired. The trial court's findings were that Dominquez's poor credit rating was responsible for Brewer's initial inability to obtain a loan for her. Supporting this finding was the fact that, before contacting Brewer, she had previously approached Southeast Financing Co. about a loan, but they were also unable to help her.
¶ 20. Even taking the evidence in the light most favorable to Dominquez, we cannot say the trial court was in error in granting summary judgment. What she provided to the court were undeveloped assertions that lacked any specific evidence and which were insufficient to create any questions of material fact.
¶ 21. According to Dominquez's argument, she and Brewer perfected a contract "[i]n the fall of 2001," which required Brewer to secure a loan within thirty days. There was no evidence, however, beyond Dominquez's allegations that there was a contract between the parties, nor any evidence as to any specific contractual provisions. If she was dissatisfied with the services of Mortgage Equity, she was free to seek a loan from another lender at any time. Also, Mortgage Equity did not receive any benefit from the alleged contract. Upon applying a de novo review of this issue, we do not find that there was sufficient evidence of a contract to withstand summary judgment. We find the trial judge was not in error in granting summary judgment against Dominquez. Accordingly, this issue is without merit.
III. Whether Brewer used reasonable efforts to obtain a loan
¶ 22. In regard to the alleged oral contract, Dominquez next claims that Brewer did not use reasonable care nor his best efforts in seeking a loan on her behalf. Dominquez does not, however, specify what Brewer should have done to fulfill the alleged best effort requirement. According to her brief, it seems her complaint was essentially that Brewer did not obtain a loan for her within thirty days.
¶ 23. Dominquez asks us to draw a parallel between this case and the case of Stringer v. Bufkin, 465 So.2d 331 (Miss. 1985). In Stringer, the supreme court held that summary judgment for an insurance agent was improper when he had told plaintiffs that their uninsured motorist coverage had been extended immediately. Id. at 334. The plaintiffs later were in an accident and sued when they learned that they had no uninsured motorist coverage. Id. at 332.
¶ 24. Stringer is not supportive of Dominquez's claim that Brewer is liable because he failed to use his best efforts in *742 attempting to secure a loan for her. As we stated previously, there is nothing in the record, beyond the vague and unsupported allegations of Dominquez and Garner, that tends to show that a contract existed between them and Mortgage Equity. Not only was there no specific evidence of a contract, but Dominquez also failed to demonstrate how, beyond exceeding the allegedly agreed-to thirty days, Brewer did not use his "best efforts" to find a loan. She merely asserts that Brewer's failure to secure a loan within the thirty days means he did not use his best efforts. This argument, however, ignores Dominquez's admittedly bad credit history and the fact that, just prior to contacting Brewer, Southeastern Financing had also been unable to get a loan for Dominquez.
¶ 25. In light of the fact that Dominquez presented no evidence of how Brewer failed to use his best efforts in his attempts to secure a loan for her, we find that the trial court properly granted summary judgment on this issue. Accordingly, we find it is without merit.
IV. Breach of fiduciary duty, fraud, and violation of the Mississippi Consumer Loan Broker Act
A. Fiduciary duty
¶ 26. In Mississippi, a fiduciary relationship may arise in the following situations:
(1) the activities of the parties go beyond their operating on their own behalf, and the activities [are] for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where one party has dominion or control over the other.
Robley v. Blue Cross/Blue Shield, 935 So.2d 990, 995(¶ 12) (Miss.2006) (quoting Univ. Nursing Assocs., PLLC v. Phillips, 842 So.2d 1270, 1274(¶ 9) (Miss.2003)). We do not ordinarily impose fiduciary duties upon contracting parties. Id. at 994-95(¶ 11). Furthermore, as a matter of law, a mortgagor-mortgagee relationship is usually not a fiduciary relationship. Merchants & Planters Bank v. Williamson, 691 So.2d 398, 403 (Miss.1997). In Williamson, the court noted that to hold otherwise would be "to impose fiduciary concepts upon what is, in many cases, a standard contractual relationship between parties with fundamentally different interests." Id. at 404.
¶ 27. We do not find there were any facts here to suggest that a fiduciary relationship arose between Dominquez and Brewer or the other appellees. As in Williamson, this was merely an arms-length business transaction, and there was no evidence to suggest that anyone exercised any dominion and control over Dominquez.
B. Fraud
¶ 28. In regard to Dominquez's claim of fraud, she must put on evidence of the following:
(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.
Hobbs Auto., Inc. v. Dorsey, 914 So.2d 148, 153(¶ 18) (Miss.2005) (quoting Spragins v. Sunburst Bank, 605 So.2d 777, 780 (Miss. 1992)). Rule 9(b) of the Mississippi Rules of Civil Procedure further provides that, in all allegations of fraud, "the circumstances constituting fraud or mistake shall be stated with particularity."
*743 ¶ 29. With regard to the elements of a claim of fraud, Dominquez's claim contains no allegations of specific instances of fraud. As such, we do not find it was error to grant summary judgment on this issue; therefore, it is without merit.
C. Mississippi Consumer Loan Broker Act
¶ 30. Dominquez contends that Brewer and the other appellees violated section 81-19-23 of the Mississippi Code Annotated (Supp.2007). Section 81-19-23 provides, in pertinent part, as follows:
(1) No consumer loan broker may:
. . .
(g) Make a false promise in order to influence or induce a person to use the consumer loan broker's services, whether made through agents, employees, advertising or otherwise;
(h) Misrepresent or conceal essential or material facts regarding the consumer loan broker's services on any transaction under this chapter.
¶ 31. We reiterate that, besides her allegations, Dominquez has not put forth any specific evidence of any wrongdoing by the appellees that would be sufficient to withstand summary judgment. This reasoning is equally applicable to this issue; therefore, we find it to be without merit.
V. Waiver of arbitration
¶ 32. Dominquez next claims that it was improper to grant summary judgment on her claim under Section 75-24-15 of Mississippi Code Annotated (Rev.2000). In support of this she cites Phillips, 842 So.2d at 1276(¶ 17), for the proposition that a party who actively participates in litigation waives the right to enforce arbitration. She argues that this Court should again draw a parallel, this time between Phillips and the present case.
¶ 33. We find Phillips to be inapplicable to the case at hand. Phillips involved a private arbitration agreement, whereas section 75-24-15(2) contains a statutory requirement with which a plaintiff must comply. In Phillips, the supreme court ultimately found that the defendant had not waived his right to compel arbitration, either by participating in litigation or by delaying in his demand for arbitration. Phillips, 842 So.2d at 1277-78 (¶¶ 22, 27). While we do not find Phillips to be applicable, we, nevertheless, point out that Palmer, in his answer to the complaint and throughout the proceedings, has consistently asserted that Dominquez failed to comply with the statutory requirements.
¶ 34. Section 75-24-15(2) provides as follows: "In any private action brought under this chapter, the plaintiff must have first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General." Dominquez admits that she did not take any steps to resolve her claim through informal resolution as required by the statute. Accordingly, we find the trial court did not err in granting summary judgment on this claim. This issue is without merit.
VI. Insufficient funds checks
¶ 35. Between Dominquez and Garner, neither knew about the specifics of the checks, and each one stated that the other was the person to ask about them. They admitted that Brewer had "covered" some of the checks but could not identify which checks fell into this category. They also were not able to specify the purpose of each check, namely, whether they were payment for Garner's services or some type of loan to pay the couple's expenses during the loan process.
¶ 36. Because Dominquez put on no evidence regarding which of the checks *744 remained unpaid and whether the checks were payments to Garner for services rendered or for loans, as alleged, we do not find it was improper to grant summary judgment on this issue. This issue is, therefore, without merit.
VII. Emotional distress, negligent supervision, and piercing the corporate veil
A. Emotional distress
¶ 37. The trial court dismissed this issue as an element of damages and not an actual claim. Because all Dominquez's claims were dismissed through summary judgment, we agree that it was not proper to consider whether she could be awarded damages for emotional distress.
B. Negligent supervision and piercing the corporate veil
¶ 38. Dominquez presented no evidence that Mortgage Equity or Palmer were negligent in supervising Brewer. The same is true of her claim that the court should have pierced the corporate veil of Mortgage Equity in order to hold Palmer liable.
¶ 39. Dominquez's claims for emotional distress, negligent supervision, and piercing the corporate veil alleged no issues of material fact, so they were properly dismissed. This issue is without merit.
¶ 40. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.