# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-IA-00031-SCT

*SUSAN WOODARD*

*v.*

*KIM MILLER*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/26/2019 |
| TRIAL JUDGE: | HON. ADRIENNE ANNETT HOOPER-WOOTEN |
| TRIAL COURT ATTORNEYS: | KRISTOPHER W. CARTER |
| | JOHN LEONARD WALKER, JR. |
| | CHRISTOPHER COLLINS VAN CLEAVE |
| | CHARLES STEPHEN STACK, JR. |
| | ROBERT A. BIGGS, III |
| | ADAM BLAKE HARRIS |
| | ERIC JOSEPH DILLON |
| | MICHAEL BRADY MITCHELL |
| | KARL CRAWFORD HIGHTOWER |
| | MICHAEL BRANT PETTIS |
| | KATHERINE HEWES HOOD |
| | WADE G. MANOR |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT A. BIGGS, III |
| | CHARLES STEPHEN STACK, JR. |
| ATTORNEYS FOR APPELLEE: | JOHN LEONARD WALKER, JR. |
| | CHRISTOPHER COLLINS VAN CLEAVE |
| | KRISTOPHER W. CARTER |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 08/12/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2020-IA-00056-SCT

*MISSISSIPPI ANNUAL CONFERENCE OF THE*
*UNITED METHODIST CHURCH,*
*INCORPORATED*

*v.*

*KIM MILLER*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/03/2020 |
| TRIAL JUDGE: | HON. ADRIENNE ANNETT HOOPER-WOOTEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES G. WYLY, III |
| | ADAM BLAKE HARRIS |
| | HEATHER EDWARD MURPHY |
| ATTORNEYS FOR APPELLEE: | JOHN LEONARD WALKER, JR. |
| | CHRISTOPHER COLLINS VAN CLEAVE |
| | KRISTOPHER W. CARTER |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 08/12/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2020-IA-00238-SCT

*CHARLES ANDREW "ANDY" JOHNSON*

*v.*

*KIM MILLER*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/11/2020 |
| TRIAL JUDGE: | HON. ADRIENNE ANNETT HOOPER-WOOTEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ERIC JOSEPH DILLON |
| ATTORNEYS FOR APPELLEE: | JOHN LEONARD WALKER, JR. |
| | CHRISTOPHER COLLINS VAN CLEAVE |
| | KRISTOPHER W. CARTER |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED AND REMANDED - 08/12/2021 |

MOTION FOR REHEARING FILED:
MANDATE ISSUED:


**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     In the aftermath of her divorce from ex-Methodist minister Andrew Johnson, Kim

Miller sued not only Johnson but also his employer—the Mississippi Annual Conference of

the United Methodist Church (MUMC).  Miller also sued fellow MUMC minister Susan

Woodard.  Her claims against Johnson were aimed at his risky extramarital sexual behavior,

which led to Johnson contracting HIV and later infecting Miller with the virus.  Miller based

her claims against MUMC and Woodard on her allegation that, had the conference and the

fellow minister followed United Methodist policy and procedure, they would have discovered

Johnson's behavior and remedied it or warned Miller before she contracted HIV.

¶2.     While Miller has undoubtedly suffered a terrible wrong, the question before this Court

on interlocutory appeal is whether she has established a wrong for which she can legally

recover.  After review, it is clear that Miller seeks to hold MUMC and Woodard *legally*

accountable for failing to follow *religious* doctrine and procedure.   Under the First

Amendment, this Court has no authority to consider and enforce religious standards.  Thus,

MUMC and Woodard are entitled to summary judgment.

¶3.     Miller's claims against her ex-husband, Johnson, are not barred by the First

Amendment.  Still, Johnson insists he too is entitled to summary judgment based on a mutual

release in Miller and Johnson's divorce settlement.  But Johnson did not pursue his

3

affirmative defense based on the release for more than two and a half years. By that time, the trial court deemed this defense waived. And after review, we hold the trial court did not abuse its discretion by denying Johnson summary judgment on this basis.

¶4. We reverse the trial court's orders denying MUMC's and Woodard's motions for summary judgment and render judgments in their favor. But we affirm the order denying Johnson's motion for summary judgment and remand Miller's claims against Johnson to the trial court.

## Background Facts & Procedural History

### I. Miller and Johnson's Marriage

¶5. Miller and Johnson married in 1991. During their marriage, Johnson engaged in extramarital sexual affairs with other men. At some point during late 2012 and the first half of 2013, Johnson contracted human immunodeficiency virus (HIV) from one of his extramarital same-sex affairs. Johnson continued to have intercourse with his wife, Miller. And on July 26, 2013, Johnson discovered he had HIV through a self-test. The next day, he informed Miller that he was HIV-positive. Miller later tested positive as well.

¶6. Miller filed for divorce from Johnson on August 23, 2013, based on the statutory ground of adultery. Miller and Johnson later agreed to a divorce on the basis of irreconcilable differences. The two entered into a divorce-settlement agreement, which included language that "each fully, finally and forever release[d] the other from any and all claims, obligations, and/or causes of action in this matter . . . ."

### II. Johnson's Employment with MUMC

4

¶7.     When Johnson and Miller married, Johnson was in seminary and on track to become a minister for the MUMC.  In Miller's own words, before she married Johnson:

> [a MUMC minister and his wife] expressed a great deal of concern that I wanted to further my education to enable me to work as a professor in a college environment because that would interfere with the Mississippi United Methodist Conference's ability to appoint [Johnson] to various ministries within the itinerant system. They explained to me that having to consider a pastor's wife's career in making appointments placed a tremendous burden on the Conference.  Pastor McCormick, a duly ordained and appointed minister of the Mississippi United Methodist Conference, told me very specifically that if we moved where and when the Bishop directed, and that if I submitted myself to that lifestyle, [Johnson's] career would result in appointment to bigger and better churches and we would be financially rewarded.  Pastor McCormick told me that if I abandoned by own career aspirations in favor of submitting to the Church's itinerant system, then the Church would take care of and protect me and my family.

> I was repeatedly told by representatives of the Mississippi United Methodist Conference that if I abandoned by own ambitions and submitted myself to serving my pastor husband the conference would care for me financially, spiritually and physically.  I was promised I would be protected and all my needs would be taken care of.

> I relied on the promises of care and protection made by representatives of the Mississippi United Methodist Conference, and did not pursue my ambitions of furthering my education and pursuing opportunities to teach at the college level.

¶8.     Over the ensuing decades, Johnson served several churches within the MUMC.  During this time, he became friends with his colleague Susan Woodard, a fellow MUMC minister.  In addition to being a pastor, Woodard has a doctorate in psychotherapy and is a practicing psychotherapist with a certification in multiple addictions, including sex addiction.

¶9.     After Johnson confessed to Miller, the couple called Woodard, who drove six hours the next day to provide in-person crisis support.  To help Johnson with his sex addiction,

5

Woodard encouraged Johnson "to remove any acting out material off of his computer, in the same way that an alcoholic would take his alcohol out of the house." This included removing any pornography Johnson had downloaded. Woodard also suggested he shut down and purge any email accounts he had used to secretly contact men to meet for sex.

¶10. According to the Book of Discipline of the United Methodist Church, self-avowed practicing homosexuals cannot serve in ordained ministry. And on July 28, 2013, the day after Johnson revealed his extramarital homosexual behavior and HIV status to Miller, MUMC placed Johnson on leave.

### III. Miller's Lawsuit

¶11. On July 25, 2016, Miller sued MUMC, Johnson, and Woodard.[1] Her forty-four page complaint asserted multiple claims—intentional and negligent infliction of emotional distress, negligence per se, negligent hiring and retention, negligent supervision, negligent failure to provide support, interference with a civil action, breach of fiduciary duty, failure to warn, and concealment. The complaint alleged Johnson had a duty to warn her of his HIV status before he had sex with her. And because Johnson was MUMC's "agent," MUMC was vicariously liable for his actions.

¶12. The complaint also alleged MUMC had an independent duty in selecting, hiring, appointing, and retaining its pastors. And had it exercised reasonable care, Miller claimed, MUMC would not have hired or retained Johnson, and Miller would not have suffered her

---

[1] She also named as a defendant First United Methodist Church in Gulfport (FUMC), the church Johnson was serving when he confessed to Miller about his affairs and HIV status.

6

allegedly foreseeable injury. In particular, the complaint asserted that MUMC knew or should have known about Johnson's sexual behavior and that he posed a risk to others, including Miller. She insisted that had MUMC properly exercised church discipline over Johnson and followed its own specific sexual-misconduct policies, MUMC would have warned Miller and/or remedied Johnson's dangerous conduct. The complaint alleged Miller "justifiably relied on MUMC's . . . promise to ensure and annually certify that her pastor/husband was not a practicing homosexual; and that justifiable reliance caused [Miller] to be lulled into a false sense of security so that [she] did not discover or perceive what she ordinarily might have."

¶13. As to Woodard, the complaint focused on Woodard's actions in response to Johnson's July 27, 2013 phone call. It alleged Woodard, by helping Johnson remove data from his computer, had interfered with a civil action and had negligently and/or intentionally concealed information. Woodard responded with a motion to dismiss for failure to state a claim. *See* M.R.C.P. 12(b)(6). The trial court granted this motion in part, dismissing Miller's causes of action for interference with a civil action and for spoilation "as those causes of action do not exist under Mississippi law." But the trial judge refused to dismiss any other remaining claims.

### IV. Motions for Summary Judgment

¶14. Following two years of discovery, Woodard moved for summary judgment on April 8, 2019. Through discovery, it emerged that Miller was asserting a fiduciary-duty-based claim against Woodard. This claim centered on Woodard's alleged failure to follow MUMC's own

7

policies and report Johnson's homosexual behavior to superiors within the church conference. In Woodard's motion for summary judgment, Woodard first asserted that Miller's attempt to place a duty upon Woodard "via the canons of the church" violates the First Amendment of the United States Constitution. Further, she argued Mississippi law imposes no duty upon her under this case's undisputed facts.

¶15. Several months later, MUMC also moved for summary judgment. MUMC too relied on the First Amendment. Citing the ecclesiastical abstention doctrine,[2] MUMC pointed out that courts of law have no authority to consider or enforce religious standards. Because "[t]he entirety of [Miller's] lawsuit requires interpretation, application, and enforcement of Church doctrine as a legal duty imparted on MUMC," MUMC argued it was entitled to summary judgment as a matter of law. MUMC also suggested Miller's claims based on vicarious liability should be dismissed as a matter of law because Miller released her claims against Johnson in their divorce settlement.

¶16. On September 27, 2019, Johnson filed a joinder to MUMC's motion for summary judgment. He asserted Miller had released Johnson from any and all claims through the divorce settlement.

¶17. The trial court heard Woodard's, MUMC's, and Johnson's summary-judgment motions during the same October 29, 2019 hearing. The trial court granted Woodard's

---

[2] "The ecclesiastical abstention doctrine recognizes that the Establishment Clause of the First Amendment precludes judicial review of claims that require resolution of 'strictly and purely ecclesiastical' questions." *McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 348 (5th Cir. 2020) (quoting *Serbian E. Orthodox Diocese for U.S. and Can. v. Milivojevich*, 426 U.S. 696, 713, 96 S. Ct. 2372, 49 L. Ed. 2d 151 (1976)).

motion in part, dismissing Miller's claim for intentional infliction of emotional distress as time-barred.[3] But the judge denied summary judgment on Miller's remaining claims based on "numerous genuine issues of material fact."

¶18. By separate order, the trial court denied MUMC's motion for summary judgment, citing the existence of genuine issues of material fact.

¶19. Finally, the trial court granted in part and denied in part Johnson's joinder in MUMC's motion for summary judgment. The trial court dismissed Miller's claim for intentional infliction of emotional distress as time-barred.[4] And because Mississippi does not recognize independent tort claims for spoliation of and interference with a civil action, the judge dismissed these claims too. But the rest of Johnson's joinder motion was denied. Specifically, the trial court ruled Johnson had waived his defense that Miller's claims against him had been released in the 2015 settlement agreement "because Johnson failed to assert the defense and actively participated in discovery."

---

[3] During the pendency of this appeal, this Court reversed its prior ruling that the claim of intentional infliction of emotional distress has a one-year statute of limitations because it falls in the general category of intentional torts. *GEICO Cas. Co. v. Stapleton*, 315 So. 3d 464 (Miss. 2021) (overruling *Jones v. Fluor Daniel Servs. Corp.*, 32 So. 3d 417, 422-23 (Miss. 2010)). Instead, under the plain language of Mississippi Code Section 15-1-35 (Rev. 2019), only the causes of action expressly enumerated in that section have a one-year statute of limitations. *Id.* at 468. The tort of intentional infliction of emotional distress is not expressly enumerated under Section 15-1-35 or any other specific statute. Thus, it falls under the general three-year statute of limitations of Mississippi Code Section 15-1-49 (Rev. 2019). *Id.* This intervening decision does not impact our holding that Woodard is entitled to summary judgment on all claims for reasons other than the statute of limitations—namely, the First Amendment.

[4] On remand, our intervening holding in *Stapleton*, 315 So. 3d at 468, may impact the trial court's interlocutory decision to dismiss Miller's IIED claim against Johnson.

¶20. Woodard, MUMC, and Johnson each filed petitions for interlocutory appeal.[5] We granted all three, consolidating them into this one appeal.

## Discussion

¶21. We review the denial of a motion for summary judgment de novo, applying the same standard as the trial court. *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 228 (Miss. 2005). We view the evidence in the light most favorable to the non-movant. *Id.* "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).

¶22. After review, we hold MUMC and Woodard are entitled to summary judgment as a matter of law. Constitutionally, this Court cannot impose higher legal duties on MUMC and Woodard on the basis of their respective religious roles as a church conference and a minister within that conference. And by relying on church doctrine and procedure to support her claims, Miller is asking the court to do just that.

¶23. But Johnson is not entitled to summary judgment. Instead, we agree with the trial court that Johnson waived his defense based on the release in the divorce settlement by not pursuing it for more than two and a half years.

### I. Claims Against MUMC

---

[5] FUMC, the fourth named defendant in this case, also filed a motion for summary judgment, which the trial judge heard at the October 29, 2019 hearing. The trial court granted in part and denied in part FUMC's amended motion for summary judgment at the same hearing. But FUMC did not petition for interlocutory appeal.

¶24.    MUMC argues no relevant facts are at issue and that its interlocutory appeal solely raises questions of law.  We agree.

¶25.    Miller's theory of recovery against MUMC centers on her assertion that MUMC owed her a duty to discover and somehow remedy her husband's extramarital sexual activities and that its failure to do so caused her injury.  The fact MUMC is an ecclesiastical body does not "categorically insulate . . . [it] from judicial scrutiny . . . ."  **Mabus v. St. James Episcopal Church**, 884 So. 2d 747, 755 (Miss. 2004) (quoting **Sanders v. Casa View Baptist Church**, 134 F.3d 331, 335-36 (5th Cir. 1998)).  But this Court cannot hold MUMC "to a higher standard or impose special duties or burdens on the basis of [its] religious status."  **Id.** (citing **Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah**, 508 U.S. 520, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993); **Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet**, 512 U.S. 687, 114 S. Ct. 2481, 129 L. Ed. 2d 546 (1994); **McDaniel v. Paty**, 435 U.S. 618, 98 S. Ct. 1322, 55 L. Ed. 2d 593 (1978)); *see also* U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . .").  Thus, when assessing whether MUMC owed Miller a legal duty that it breached, this Court must view MUMC as it would any secular employer.  **Mabus**, 884 So. 2d at 755.  Viewing MUMC in this manner, we find that Miller has failed to demonstrate how MUMC, as her ex-husband's employer, owed her any duty that it breached.

¶26.    For clarity, let us first explain what this case is not.  This is not a clergy sexual-abuse case.  Miller is not asserting MUMC knew or should have known Johnson was engaging in sexual predatory behavior and thus had a duty to warn and protect those, including her, who

came into contact with Johnson *through his role as a minister*. *Cf.* **Roman Catholic Diocese of Jackson v. Morrison**, 905 So. 2d 1213 (Miss. 2005). Rather, Miller is asserting MUMC owed her a duty *as Johnson's wife* to protect her against the consequences of her husband's extramarital sexual misconduct. But MUMC owed Miller no duty because "[u]nder Mississippi law, . . . 'an employer's duty to supervise does not include a duty to uncover his employees *concealed, clandestine, personal activities*.'" **Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay**, 42 So. 3d 474, 489 (Miss. 2010) (quoting **Tichenor v. Roman Catholic Church of the Archdiocese of New Orleans**, 32 F.3d 953, 960 (5th Cir. 1994)).

¶27. Miller claims MUMC *assumed* this duty by assuring her, before she married Johnson, that if she abandoned her own career ambitions to support Johnson's itinerant-preaching career, MUMC would sufficiently provide for her and her family. Further, she asserts MUMC assumed a duty by adopting the United Methodist Church's sexual-misconduct policy, which forbids practicing homosexuals from serving as ministers. This policy, as Miller describes it in her own words, included:

> establish[ing] a regimen of psychological testing, education, interviews, character examinations, and careful supervision and monitoring to ensure that its clergy did not violate MUMC's policies against sexual misconduct. A clergy member who was a practicing homosexual or used pornography would be brought up on charges (which would alert his spouse to the conduct), and could potentially be terminated.

According to Miller, she was not harmed by her ex-husband's risky extramarital sexual behavior. Rather, she claims she was harmed by her husband's employer's failure to ferret out her husband's sexual activities and protect her from the consequences.

12

¶28. Again, under the First Amendment, for Miller's claim to proceed against MUMC, the claimed assumed duty cannot be religious or ecclesiastical in nature. *Morrison*, 905 So. 2d at 1226. And we are hard-pressed to see how Miller's claim would hold up if it were against a non-religious employer. Though Miller personally interpreted MUMC's promise to provide for her and her family if she gave up her own career goals as both an assurance of sufficient financial remuneration *and* a guarantee against her husband committing adultery, such an interpretation would be considered wholly unreasonable if the promise was being made by, say, a law firm, a hospital, or a technology company. In other words, Miller interpreted the assurances of MUMC ministers as including guaranteeing the success of her marriage and family life precisely *because* her fiancé was going into church ministry. Thus, her claim fails because the religious nature of his employer cannot be the basis for recognizing a legal duty.

¶29. Further, Miller's reliance on the United Methodist Church's Book of Church Discipline—namely, its prohibition against ordaining practicing homosexuals—as giving rise to a duty to warn her of her husband's homosexual behavior is fraught with First Amendment concerns. Recently, the United States Supreme Court expanded its definition of "sex" in Title VII of the Civil Rights Act of 1965 to include being homosexual. *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020). Thus, the Supreme Court concluded it is a violation of federal law for an employer to discriminate against an individual for being homosexual. *Id.* at 1741-42. While religious liberty was not at issue in *Bostock*, the Supreme Court did note that in other Title VII cases it has "recognized that the First Amendment can

13

bar the application of employment discrimination laws 'to claims concerning the employment relationship between a religious institution and its ministers.'" *Id.* at 1754 (quoting *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 565 U.S. 171, 188, 132 S. Ct. 694, 181 L. Ed. 2d 650 (2012)). In other words, the employment policies Miller tries to argue gives rise to a legal duty would now, under *Bostock*, be illegal *but for* the religious nature of Johnson's employment. So this Court cannot treat MUMC's sexual-misconduct policies as it would any secular employment manual.

¶30. Simply put, by seeking to hold MUMC liable for not protecting her against the negative consequences of her husband's homosexual behavior, Miller is asking this Court to hold MUMC "to a higher standard or impose special duties or burdens on the basis of [its] religious status" and church doctrine surrounding sexual behavior. *Mabus*, 884 So. 2d at 754. Because the First Amendment prevents Miller from filing suit based on the failure to perform religious or ecclesiastical duties, her claims against MUMC fail as a matter of law.

¶31. Similarly, Miller's claims against MUMC based on vicarious liability also fail. Again, this case is not like *Morrison*, in which this Court held that a vicarious-liability claim could proceed against the Roman Catholic Church based on allegations one of its priests sexually assaulted three minor parishioners. *Morrison*, 905 So. 2d at 1226. We allowed that claim to proceed because of the "substantial power and control" the Catholic diocese enjoyed over the priest. *Id.* Here, Johnson's specific action for which Miller seeks to hold MUMC vicariously liable was his having sexual intercourse with his wife after engaging in high-risk sexual behavior with other men. Miller certainly presents no evidence that this act was

14

performed in the course and scope of Johnson's church duties, over which MUMC had power and control. *See* **Children's Med. Grp., P.A. v. Phillips**, 940 So. 2d 931, 936 (Miss. 2006) (holding that "[i]t defies reason to argue that engaging in an affair at work or during working hours in any way furthered the business interests of [the employer] or enhanced the medical care of [the employer's] pediatric patients"). "There is no vicarious liability where an agent acted with *personal* or malicious motive, unless the principal authorized or ratified the acts." **Mabus**, 884 So. 2d at 763 (emphasis added). And Johnson's personal decision to initiate sex with his wife after knowingly engaging in high-risk extramarital sexual behavior cannot be said to have been authorized or ratified by MUMC.

¶32.    MUMC is entitled to summary judgment as a matter of law.

### II.    Claims Against Woodard

¶33.    Miller's claims against Woodard, a MUMC minister and colleague of Johnson, also fail as a matter of law.

¶34.    Miller asserts Woodard owed her a fiduciary duty, which Woodard breached by not warning Miller of Johnson's "high-risk sexual behavior with men."[6] In **Mabus**, this Court held that a claim for breach of fiduciary duty against an Episcopal priest was not necessarily prohibited by the First Amendment. **Mabus**, 884 So. 2d at 760. But this Court also held "a

---

[6] Miller also asserts Woodard was negligent because she encouraged and helped Johnson scrub homosexual pornography from his work computer after Johnson revealed his adultery and HIV status to Miller. But the trial court dismissed Miller's claims based on alleged spoilation of evidence, as such actions do not rise to the level of an independent tort. And Miller did not cross-appeal the dismissal of these claims.

15

priest's position alone is insufficient to establish a fiduciary relationship."[7] **Id.** at 757. Instead, "[w]hether a fiduciary relationship exists depends upon factual circumstances, not upon professional standards of conduct for a reasonable member of the clergy." **Id.**

¶35. "A fiduciary duty is established . . . '[w]henever there is a relation between two people in which one person is in a position to exercise a dominant influence upon the former, arising either from weakness of mind or body, or through trust . . . .'" **Id.** at 758 (quoting **Mullins v. Ratcliff**, 515 So. 2d 1183, 1191 (Miss. 1987)). In **Mabus**, this Court ruled that Julie Mabus failed to present evidence establishing her priest owed her a fiduciary duty. **Id.** at 759. There was no fiduciary duty because "[t]he evidence presented reveal[ed] that Julie was not dependent upon [her priest], nor that she reposed any trust or confidence in him." **Id.**

¶36. For similar reasons, Woodard is also entitled to summary judgment. While Miller asserts she and Woodard, her husband's friend and co-worker, were in a fiduciary relationship, Miller presents no evidence to establish this fact beyond Woodard's position as a minister with MUMC and Woodard's knowledge of and reporting responsibilities under MUMC's sexual-misconduct policies. Again, a fiduciary duty cannot arise merely from a minister-church member relationship. **Id.** at 757. Here, unlike in **Mabus**, Woodard was not even a minister at Miller's church.

¶37. Further, it is not enough that Woodard was a minister with MUMC with specialized training in sex addiction and Miller was a MUMC church member whose husband apparently

---

[7] As we explained, "[i]f this Court were to recognize such a duty on the basis of a position held within the church, we would necessarily be required to define a reasonable duty standard and to evaluate [the priest's] conduct compared to that standard. To do so would violate the First Amendment." **Mabus**, 844 So. 2d at 757.

16

was a sex addict engaged in high-risk behavior. Like Julie Mabus, Miller had to present evidence that Miller was *dependent* on Woodard. But the only evidence Miller presents is that Woodard "rushed in" to provide guidance to Miller and Johnson *after* Johnson revealed he had infected Miller with HIV. Not only is the proposed relationship ancillary, a fiduciary relationship cannot arise *after* the alleged breach of that duty has already occurred. *See Lowery v. Guar. Bank & Tr. Co.*, 592 So. 2d 79, 83 (Miss. 1991) ("A fiduciary duty must exist before a breach of the duty can occur."). Prior to that time, Miller's evidence merely establishes Woodard, as Johnson's co-worker, was a good friend of the couple. Miller cites no law imposing a *legal* duty to warn the spouse of a friend or co-worker of that friend or co-worker's high-risk sexual behavior or HIV status.

¶38. As to Miller's assertion that Woodard, by helping the couple after Johnson confessed, established a fiduciary duty to protect the distraught Miller, this claim fails for the same reason her claim against MUMC fails. Just as with her claim against MUMC, Miller points to MUMC policy guiding its ministers in dealing with members in traumatic situations and alleges Woodard failed to follow this policy. But again, under the First Amendment, church policies cannot be used to impose a higher legal burden owed by ministers to church members.

¶39. Thus, all Miller's claims against Woodard fail as a matter of law.

### III. Claims Against Johnson

¶40. Johnson's interlocutory appeal is of a different nature. Johnson does not argue Miller's claims against him individually fail for inability to establish a legal duty. Instead,

17

Johnson argues Miller's claims against him were released as part of his and Miller's divorce settlement. The trial court ruled Johnson had waived this defense by failing to assert it and actively participating in discovery. And after review, we agree.

¶41. In *MS Credit Center, Inc. v. Horton*, 926 So. 2d 167, 180 (Miss. 2006), this Court held that "[a] defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver." The affirmative defense at issue in *Horton* was an arbitration agreement. But this Court was clear that *Horton*'s waiver principle "is not limited to assertion of the right to compel arbitration." *Id.* And since *Horton*, this Court has applied this waiver principle to a myriad of affirmative defenses. *See, e.g.*, *Hinton v. Sportsman's Guide, Inc.*, 285 So. 3d 142, 150 (Miss. 2019) (applying *Horton* waiver analysis to the affirmative defense of innocent-seller immunity); *Hanco Corp. v. Goldman*, 178 So. 3d 709, 712-13 (Miss. 2015) (holding that, under the *Horton* Doctrine, an employer waived its exclusive-remedy affirmative defense under the Mississippi Workers' Compensation Act); *Meadows v. Blake*, 36 So. 3d 1225, 1232-33 (Miss. 2010) (holding that, based on *Horton*, a medical-malpractice defendant waived the defense of the plaintiff's failure to comply with statutory pleadings requirements); *Spann v. Diaz*, 987 So. 2d 443, 448 (Miss. 2008) (applying *Horton* waiver analysis to the affirmative defense of the running of the statute of limitations); *Estate of Grimes ex rel. Grimes v. Warrington*, 982 So. 2d 365, 370 (Miss. 2008) (relying on *Horton* to hold defendant's unreasonable delay pursuing MTCA-immunity defense waived

18

this affirmative defense); *E. Miss. State Hosp. v. Adams*, 947 So. 2d 887, 891 (Miss. 2007) (relying on *Horton* to hold that the defendants waived the defenses of insufficiency of process and insufficiency of service of process).

¶42. Turning to the affirmative defense based on the release in the divorce settlement, arguably Johnson raised this affirmative defense in his answer to Miller's complaint, when he generically asserted that "[t]he Plaintiff's claims are barred by released and waiver." *But see Hutzel v. City of Jackson*, 33 So. 3d 1116, 1121 (Miss. 2010) (holding city waived defenses of release and accord and satisfaction "pursuant to *Horton* and Rule 8(c)" of the Mississippi Rules of Civil Procedure). However, Johnson then waited more than two and a half years to pursue his claim that Miller expressly released her claim against him in their divorce settlement. *Cf. Warrington*, 982 So. 2d at 370 (holding that defendant doctor, who pled that he was entitled to tort immunity under the Mississippi Tort Claims Act (MTCA) but then waited five years to file for summary judgment based on the MTCA, waived this defense). And even then, he merely joined MUMC's motion for summary judgment, in which MUMC asserted Miller had released her claims against Johnson in their divorce settlement, absolving MUMC from any vicarious liability.

¶43. In *Horton*, the defendant delayed pursuing its right to arbitration for eight months. While this Court declined "to set a minimum number of days which will constitute unreasonable delay in every case," instead "defer[ing] such findings for the trial court on a case by case basis," this Court did hold "that—absent extreme and unusual circumstances—an eight month unjustified delay in the assertion and pursuit of any

19

affirmative defense or other right which, if timely pursued, could serve to terminate the litigation, coupled with active participation in the litigation process, constitutes waiver as a matter of law." *Horton*, 926 So. 2d at 181.

¶44. Johnson seeks to justify his years-long delay by arguing that the divorce settlement was confidential. He asserts he and MUMC could not present the agreement to the Hinds County Circuit Court until the Harrison County Chancery Court granted permission, which it did on April 23, 2019. But this is not an extreme or unusual circumstance.

¶45. The agreement's confidentiality may excuse the delay by *MUMC*, a non-party to the agreement that did not have access to it and did not present it to the circuit court until April 2019. But Johnson was a party to the agreement. Thus, he was certainly aware of the release provision at the inception of Miller's lawsuit and its potential to terminate Miller's litigation against him. And Johnson provides no explanation for why he could not have filed the confidential agreement under seal for the circuit court's in camera review. He also does not explain why he did not pursue presenting the release to the circuit court much sooner than his September 2019 joinder of MUMC's motion for summary judgment.

¶46. Therefore, it appears all the conditions for *Horton*'s waiver as a matter of law are present. So the trial court did not abuse its discretion by finding Johnson had waived the defense of the release.

**Conclusion**

¶47. In this consolidated interlocutory appeal, we reverse the orders denying MUMC and Woodard full summary judgment and render a judgment in both MUMC's and Woodard's

20

favor on all claims against them. But we affirm the order partially denying Johnson's motion for summary judgment, and we remand Miller's claims against Johnson to the trial court.

¶48.   **AS TO NO. 2020-IA-00031-SCT: REVERSED AND RENDERED. AS TO NO. 2020-IA-00056-SCT: REVERSED AND RENDERED. AS TO NO. 2020-IA-00238-SCT: AFFIRMED AND REMANDED.**

   **RANDOLPH, C.J., KITCHENS AND KING, P.JJ., BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, J.**

   **GRIFFIS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶49.   I concur with the majority's decision to reverse and render summary judgment in favor of MUMC and Woodard.

¶50.   As to Johnson and Issue III, I respectfully disagree. The majority relies on *MS Credit Center, Inc. v. Horton*, 926 So. 2d 167 (Miss. 2006). The majority correctly points out that this Court has applied *Horton* to other affirmative defenses. Despite this trend of decisions, the Mississippi Rules of Civil Procedure do not support the expansion of *Horton* to the adjudication of affirmative defenses other than arbitration.[8] Furthermore, even if *Horton* controls our decision here, summary judgment should be granted to Johnson.

   *I.   Standard of Review*

¶51.   The standard of review here should also include:

   A "[w]aiver of arbitration is not a favored finding, and there is a presumption against it." *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781

---

   [8]   An arbitration is not actually a defense to a legal claim that has been asserted. Instead, arbitration recognizes that the parties have agreed or contracted to have their dispute decided by a method or person other than the traditional judicial system. No other affirmative defense listed in Rule 8 of the Mississippi Rules of Civil Procedure is similar to arbitration, with the possible exception of discharge in bankruptcy.

21

F.2d 494, 497 (5th Cir. 1986); *see also* [***Subway Equip. Leasing Corp. v. Forte***, 169 F.3d 324, 326 (5th Cir. 1999)] ("[A] party alleging waiver of arbitration must carry a heavy burden.")

***Russell v. Performance Toyota, Inc.***, 826 So. 2d 719, 724 (Miss. 2002).

## II. Analysis Applying ***Horton***

¶52. On September 27, 2019, Johnson joined MUMC's motion for summary judgment and asserted his affirmative defense that Miller released Johnson from all claims in the divorce documents. The trial court considered Johnson's motion on October 29, 2019, along with similar motions filed by Woodard and MUMC. By order dated February 11, 2020, the trial court denied the motion in part and ruled, "[t]he Court finds Plaintiff's claims against Johnson, as stated in the Property Settlement Agreement, have been waived because Johnson failed to assert the defense and actively participated in discovery."

¶53. The majority determined that the "trial court ruled Johnson had waived his defense that Miller's claims against him had been released in the 2015 settlement agreement 'because Johnson failed to assert the defense and actively participated in discovery.'" Maj. Op. ¶ 19. And the majority concludes that "Johnson is not entitled to summary judgment. Instead, we agree with the trial court that Johnson waived his defense based on the release in the divorce settlement by not pursuing it for more than two and a half years." Maj. Op. ¶ 23. There is more to this legal principle than what is cited by the trial judge or the majority.

¶54. The trial court and the majority determined that ***Horton*** was controlling authority here.

¶55. ***Horton*** was an arbitration case. ***Horton***, 926 So. 2d at 172. Catherine Horton sued several insurance companies for inadequate disclosure of the terms of her insurance contract.

*Id.* She included a claim that the contract, including an arbitration agreement, was unconscionable. *Id.* The defendant insurance companies filed separate answers with affirmative defenses. *Id.* All of the defendants asserted an affirmative defense of arbitration; one defendant did so in its answer to the amended complaint. *Id.* Some, but not all, of the defendants served discovery requests. *Id.* On March 16, 2004, three of the defendants filed a motion to compel arbitration. *Id.* at 173. In response, Horton argued that they had waived the right to arbitration, that Horton's agreement was not voluntary, and that it was procedurally unconscionable. *Id.* The trial court denied the motion to compel arbitration and held that "the agreement was procedurally unconscionable and unenforceable." *Id.*

¶56. The majority relies on one sentence from *Horton* to conclude that this legal principle applies to affirmative defenses other than arbitration. I disagree, and I am of the opinion this holding in *Horton* is without legal basis and should be overruled.

¶57. The essence of the *Horton* ruling is the following:

> Our holding today is not limited to assertion of the right to compel arbitration. A defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver. . . . The issue of waiver of the right to compel arbitration must be carefully examined by the trial court the same as waiver of any other important right.

*Id.* at 180 (footnote omitted). In this first sentence, the Court expands the *Horton* ruling to other cases and other affirmative defenses that were not before the Court, that had not been briefed to the Court, and that had not been contested. There was no basis in fact or law for this statement in the opinion. The Court certainly did not consider the differences in the

23

affirmative defense of arbitration from other affirmative defenses, i.e., "accord and satisfaction, . . . assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense." M.R.C.P. 8(c). Not all affirmative defenses are the same.

¶58. The simple fact is that the statement, "[o]ur holding today is not limited to assertion of the right to compel arbitration," is dicta. *Horton*, 926 So. 2d at 180. It was neither relevant nor necessary in the Court's consideration of the *Horton* decision. Yet this dicta has been used in subsequent decisions even though the Court cited no authority for this statement, offered no rationale for this conclusion, and has not evaluated whether the Mississippi Rules of Civil Procedure support this conclusion.

¶59. The Court in *Horton* should have limited the holding to the facts, claims, and defenses presented *in that case*. Although the Court only considered the affirmative defense of arbitration in *Horton*, the author chose to expand the holding beyond that case. This broad statement as to the possible application of this legal principle to other affirmative defenses was not before the Court and was improper for the Court to conclude.

¶60. Careful consideration of *Horton* is necessary. The Court began with the following:

> Horton also raises the issue of waiver. While the trial court made no specific findings regarding waiver, Horton nevertheless alleges in her brief that [defendants] waived their right to compel arbitration. This Court has stated that the "waiver of arbitration is not a favored finding, and there is a presumption against it." *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 724 (Miss. 2002) (quoting *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494,

24

497 (5th Cir. 1986)). Nevertheless, this Court has also held that arbitration can be waived where a party "actively participates in a lawsuit or takes other action inconsistent with the right to arbitration." ***Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.***, 619 So. 2d 908, 913–14 (Miss. 1993). We have also said arbitration may be waived where a party "substantially invokes the judicial process to the detriment or prejudice of the other party." ***Univ. Nursing Assocs., PLLC v. Phillips***, 842 So. 2d 1270, 1278 (Miss. 2003).

This Court has found waiver of the right to compel arbitration in only a limited number of cases. In ***Cox***, we found the right to arbitration waived due to "extensive" pre-trial litigation, where the party seeking to enforce arbitration had filed a "summary judgment motion, requested two continuances, appealed to this Court based on a pre-trial ruling, and had requested various types of discovery." ***Cox***, 619 So. 2d at 914. Also, in ***Sanderson Farms v. Gatlin***, 848 So. 2d 828, 838 (Miss. 2003), Sanderson Farms refused to pay one-half of the arbitration costs, thereby waiving arbitration. Finally, in ***Pass Termite and Pest Control v. Walker***, 904 So. 2d 1030, 1035 (Miss. 2004), this Court found waiver where the movant delayed for 237 days before moving to compel arbitration, failed to raise the defense of arbitration in the initial pleading, requested a jury trial in its answer, and thereafter proceeded with discovery.

***Horton***, 926 So. 2d at 179-80.

¶61.   If we examine the cases cited, we find that ***Gatlin*** is certainly not relevant here. In ***Walker***, the defendant did not even assert arbitration as an affirmative defense. ***Walker***, 904 So. 2d at 1032.  In both ***Cox*** and ***Phillips***, the defendants had a right to arbitrate their claims and chose not to do so.[9]  ***Cox***, 619 So. 2d at 913; ***Phillips***, 842 So. 2d at 1277-78.  Unlike

---

9   In ***Cox***, the Court ruled:

Cox did not request arbitration within a reasonable time limit when we consider the eighteen month delay and his extensive participation in the litigation of the issues. It appears from the record that Cox did not bring up an arbitration question until one-and-a-half years after a complaint was filed against him, and after he had participated in almost every aspect of litigation. He simply filed a motion in the circuit court claiming his right to arbitration without notification to HWLF pursuant to the arbitration clause of the contract. Likewise, the procedure for election of arbitration in the event that HWLF does not send Cox notification of such a request must be reasonable.

25

each of these cases, Johnson timely and properly asserted his affirmative defense in his responsive pleading as required by Rule 8(c) of the Mississippi Rules of Civil Procedure.

¶62.    *Horton* cites *Phillips* for the proposition that waiver will be found when the party seeking arbitration "substantially invokes the judicial process to the detriment or prejudice of the other party." *Horton*, 926 So. 2d at 179 (internal quotation marks omitted) (quoting *Phillips*, 842 So. 2d at 1278); Maj. Op. ¶ 45.

¶63.    In *Phillips*, this Court considered "whether the action actions of the University and the Nursing PLLC prejudiced Phillips." *Phillips*, 842 So. 2d at 1278.  The Court explained:

> "Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party."
>
> The chancellor found that Phillips had been prejudiced by the actions of the University and the Nursing PLLC:
>
> > [Phillips] has been relieved from her current position as faculty on the nursing staff, incurred expense in seeking resolution of this matter and much time has past since her original request for information . . . Thus, had this matter been expeditiously referred to arbitration the need for terminating Phillips' contract may have been avoided.
>
> However, according to the Fifth Circuit, "[P]rejudice . . . refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal

---

The entire second sentence of Paragraph 16 suggests notification by the parties to each other. Cox never notified HWLF. Thus, even though the Customer's Agreement expressly mandates arbitration, neither party took the necessary steps to begin the process. Cox did not follow a reasonable procedure to cause arbitration; rather, he proceeded in a court process which seems to abandon his right of arbitration. Construing the arbitration provision under New York law, Cox did not assert his election of arbitration in a timely manner when considered with his court actions and the eighteen months delay.

*Cox*, 619 So. 2d at 913.

26

position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Phillips made no showing of prejudice due to delay, expense, or damage to her legal position. Furthermore, neither the University nor the Nursing PLLC invoked the judicial proceedings—Phillips did.* Finally, because we find that the University and the Nursing PLLC did not substantially participate in litigation and did not cause an undue delay, their actions could not have caused any prejudice to Phillips.

*Phillips*, 842 So. 2d 1270, 1278 (alterations in original) (emphasis added) (citations omitted).

Here, Johnson did not invoke the judicial proceedings; Miller did.

¶64. None of the cases cited in *Horton*—*Cox*, *Gatlin*, or *Phillips*—support the application of waiver to affirmative defenses other than arbitration.

¶65. Next, in *Horton*, the Court stated:

The record before us today clearly demonstrates that the Defendants asserted their right to compel arbitration in their respective answers. However, rather than proceeding within a reasonable time to file a motion to compel arbitration and request a hearing on the motion, defendants proceeded to substantially engage the litigation process by consenting to a scheduling order, engaging in written discovery, and conducting Horton's deposition. Horton asserts that this participation in the lawsuit constituted a waiver of the Defendants' right to compel arbitration. Although participation in the litigation is an important factor to be considered, more is required to constitute a waiver. Horton also asserts that Defendants waived the right to compel arbitration by their unreasonable delay in bringing the issue before the trial court for adjudication. We find that, ordinarily, neither delay in pursuing the right to compel arbitration nor participation in the judicial process, standing alone, will constitute a waiver. That is to say, a party who invokes the right to compel arbitration and pursues that right will not ordinarily waive the right simply because of involvement in the litigation process, and a party who seeks to compel arbitration after a long delay will not ordinarily be found to have waived the right where there has been no participation in, or advancement of, the litigation process.

*Horton*, 926 So. 2d at 180. This paragraph is what should limit *Horton* to arbitration cases.

When we consider arbitration, it is the fact that arbitration would remove the actual litigation

or dispute resolution process to a private arbitrator. The actions of participating in litigation are directly contrary to the opportunity to have the case arbitrated. This cannot be said of the affirmative defense of release or other affirmative defenses. The consideration of the arbitration would change the forum for dispute resolution from the court to a private arbitrator. The arbitrator would decide the actual legal issue in dispute.

¶66.   The Court in *Horton* continued:

> However, where—as here—there is a substantial and unreasonable delay in pursuing the right, coupled with active participation in the litigation process, we will not hesitate to find a waiver of the right to compel arbitration. [n.7]
>
> > [n.7] We have also held that prejudice to the party resisting arbitration is a factor to be considered. *See* ***Russell v. Performance Toyota, Inc.***, 826 So. 2d 719, 724 (Miss. 2002) (citing ***Cox v. Howard, Weil, Labouisse, Friedrichs, Inc***., 619 So. 2d 908, 911 (Miss. 1993)).

*Horton*, 926 So. 2d at 180. The time period of the delay is not determinative. Prejudice to the other party must also be considered.

¶67.   Here, the majority does not document the prejudice to Miller. In fact, Miller has offered no explanation of how she was or may be prejudiced by Johnson's delay in asserting the affirmative defense of release. The mere fact that Johnson brought it to the trial court's attention at the same time the other defendants brought their motions for summary judgment, in my opinion, should be considered a timely, efficient, and economical use of judicial resources. With no showing of prejudice, Johnson should prevail.

¶68.   Next, in *Horton*, the Court discussed the delay of filing a "motion to compel arbitration" for eight months and providing "no plausible explanation for this delay." ***Id.***

28

Johnson did not file a motion to compel. Instead, Johnson asserted his affirmative defense in a motion for summary judgment.

¶69. Finally, and most importantly, the Court in **Horton** ruled:

> Our holding today is not limited to assertion of the right to compel arbitration. A defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay [n.8] the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver. Our pronouncement today complies with the requirements of the FAA, as interpreted by the United States Supreme Court, that agreements to arbitrate may not be singled out or treated differently from other contractual provisions. The issue of waiver of the right to compel arbitration must be carefully examined by the trial court the same as waiver of any other important right.

>> [n.8] Where a motion to compel arbitration is granted, the litigation does not terminate, but rather is stayed pending completion of the arbitration process and entry of the arbitrator's decision

> In this case, the defendants delayed pursuing their right to compel arbitration for eight months (over 240 days). We decline today to set a minimum number of days which will constitute unreasonable delay in every case, but rather we defer such findings for the trial court on a case by case basis. We do hold however that—absent extreme and unusual circumstances— an eight month unjustified delay in the assertion and pursuit of any affirmative defense or other right which, if timely pursued, could serve to terminate the litigation, [n.9] coupled with active participation in the litigation process, constitutes waiver as a matter of law.

>> [n.9] To pursue an affirmative defense or other such rights, a party need only assert it in a pleading, bring it to the court's attention by motion, and request a hearing. Once a hearing is requested, any delay by the trial court in holding the hearing would not constitute a waiver.

*Id.* at 180-81 (citation omitted).

¶70. Quite frankly, I agree with the Court in ***Horton*** that a delay of eight months to bring a motion to compel arbitration would be a reason to waive the defendants' rights to the affirmative defense of arbitration. However, arbitration is different than other affirmative defenses. Under our Rules of Civil Procedure, there is absolutely nothing wrong with Johnson asserting the defense of release at trial. No Rule requires that the affirmative defense of release be brought to the court's attention at any particular time.

¶71. The essence of the ***Horton*** legal principle is the following language: "[a] defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver." *Id.* (footnote omitted).

¶72. There are three parts to this legal principle. First, we look at whether Johnson "timely and reasonably" pursued his affirmative defense. The trial court and the majority simply decide that two years is long enough. This is a very complex case involving at least one plaintiff and four defendants. The record filed with this Court contains almost 4,500 pages. The majority offers no explanation or discussion of what is "timely and reasonably" to raise and pursue the defense of release.

¶73. With release, I would expect it to be reasonable for a defendant to be able to engage in discovery, to obtain documents, and to depose the plaintiff before they pursued the enforcement of the affirmative defense.

¶74.    The complaint was filed on July 25, 2016, and Johnson's answer was filed on January 13, 2017. Miller waited more than one year to serve Johnson with discovery requests, on February 12, 2018. Johnson responded to the discovery requests on June 5, 2018. On June 25, 2018, Miller noticed the depositions of Johnson and Woodard. On June 29, 2018, Woodard noticed Miller's deposition.  MUMC and FUMC filed motions for summary judgment that were heard on September 18, 2018; but the trial court did not rule on the motions at or after the hearing.

¶75.    If we examine the state of discovery in this case, we find that much discovery remains to be completed.  Only two of the four defendants have been deposed. Miller has identified more than twenty-five fact witnesses and has given the descriptions of many others who have personal knowledge of the facts of this case, and none has been deposed. There has been no discovery as to medical records or damages other than Miller's deposition. No medical records have been obtained. No experts have been designated or deposed.  This case is not ready for trial, and at the time this Court granted the petition for interlocutory appeal, the parties were working to extend the scheduling order and the time to complete discovery and file dispositive motions.  I do not consider this time period to weigh against Johnson's timely and reasonably pursuing his affirmative defenses.

¶76.    The second part of the legal principle in ***Horton*** is whether Johnson's "enforcement of any affirmative defense . . . would serve to terminate or stay the litigation." ***Horton***, 926 So. 2d at 180. Here, it would not have terminated the litigation. Miller's complaint asserted

claims against at least four defendants, three of whom are before the Court here and one (FUMC) that did not join the petition for interlocutory appeal.

¶77.    The third part of the legal principle in *Horton* is whether Johnson "active[ly] participat[ed] in the litigation process." *Id.* As discussed above, in *Phillips*, Miller has "made no showing of prejudice due to delay, expense, or damage to her legal position. Furthermore, [Johnson did not] invoke[] the judicial proceedings—[Miller] did." *Phillips*, 842 So. 2d at 1278.  Just as in *Phillips*, Johnson has not "substantially participate[d] in litigation and did not cause an undue delay, their actions could not have caused any prejudice" to Miller. *Id.*

¶78.    Even under the *Horton* analysis, I find that Johnson has not waived his right to assert his affirmative defenses.  And it is unnecessary to go into detail because I would find that Miller released all claims against Johnson in the divorce documents.

    III.    *There is no legal basis to apply **Horton** to other affirmative defenses.*

¶79.    The Court's statement in *Horton* that "[o]ur holding today is not limited to assertion of the right to compel arbitration" has no basis in law.  *Horton*, 926 So. 2d at 180. It should be overruled, and it should not be applied to other affirmative defenses.

¶80.    There is simply no legal reason to apply *Horton* to non-arbitration affirmative defenses. The Mississippi Rules of Civil Procedure do not support or authorize the waiver of an affirmative defense that was timely and properly raised in Johnson's answer.

¶81. This issue is governed by the Mississippi Rules of Civil Procedure.[10] The pleading rules applicable here are quite simple.[11] "There shall be a complaint and an answer[.]" M.R.C.P. 7. "A pleading which sets forth a claim for relief . . . shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and, (2) a demand for judgment for the relief to which he deems himself entitled." M.R.C.P. 8(a).

¶82. Affirmative defenses are addressed in Rule 8(c). It provides:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

"Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading . . . ." M.R.C.P. 12(b).

---

[10] This Court is responsible for the Mississippi Rules of Civil Procedure, and this responsibility requires that the Court amend the Rules to correctly and accurately state Mississippi practice. By order dated May 26, 1981, this Court held:

> Pursuant to the inherent authority vested in this Court by the Constitution of the State of Mississippi . . . to promote justice, uniformity, and the efficiency of courts, the rules attached hereto are adopted and promulgated as Rules of Practice and Procedure in all Chancery, Circuit, and County Courts of this State in all civil actions filed on and after January 1, 1982, any and all statutes and court rules previously adopted to the contrary notwithstanding, and in the event of a conflict between these rules and any statute or court rule previously adopted these rules shall control.

M.R.C.P. Order Adopting the Mississippi Rules of Civil Procedure.

[11] "These rules shall be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action." M.R.C.P. 1.

33

¶83.    Johnson's answer timely and properly raised the affirmative defense of release and waiver. The question is whether the affirmative defense was waived because Johnson waited more than two and a half years to pursue the affirmative defense of release when he joined MUMC's motion for summary judgment. As written, the Mississippi Rules of Civil Procedure simply do not require Johnson to file a motion for summary judgment or pursue a decision on an affirmative defense within any certain time period.

¶84.    In fact, the Mississippi Rules of Civil Procedure allow and authorize each party to file a pretrial motion, *e.g.*, M.R.C.P. 12(b) and (c), 41(b), and 56(c) that will dispose of the case. But this decision is left to each party's discretion or strategy. Likewise, the rules allow and authorize each party to participate in discovery, *e.g.*, M.R.C.P. 26-37. The parties have the rights given under these provisions of the rules.

¶85.    Unlike the federal rules, the Mississippi Rules of Civil Procedure do not anticipate or require early judicial intervention in civil cases. Instead, our Rules contemplate that all claims and defenses will be considered and resolved at trial.[12] The Mississippi Rules of Civil Procedure do not provide the authority for the trial judge or this Court to decide that Johnson waived his affirmative defense of release and waiver.

---

[12]    Under the Mississippi Rules of Civil Procedure, the only way a trial judge may initiate consideration or disposition of a case is through a pretrial conference. Mississippi Rule of Civil Procedure 16 provides that the trial judge may: "on its own motion . . . direct the attorneys for the parties to appear before it at least twenty days before the case is set for trial for a conference to consider and determine: . . . the simplification of the issues; . . . such other matters as may aid in the disposition of the action." Certainly, the trial court may ask for a status conference or set the case for trial. Only through a scheduling order may the trial court may instruct the parties as to when certain motions must be filed. The trial court may not order that certain motions should be filed.

¶86.   This Court has authorized the Mississippi Rules of Civil Procedure and *Horton*.  The rules do not support the decision in *Horton* or its application to other affirmative defenses. If indeed *Horton* is the law in Mississippi, the Mississippi Rules of Civil Procedure should be amended to reflect when affirmative defenses must be asserted to ensure there is no waiver by a party.

*IV.    Conclusion.*

¶87.   For these reasons, I respectfully concur in part and dissent in part.

**COLEMAN, J., JOINS THIS OPINION.**